**UNITED STATES, Appellee,**

v.

**Specialist Four Theodore BALLARD,
U.S. Army, Appellant.**

No. 51824.
CM 446281.

U.S. Court of Military Appeals.

Aug. 26, 1985.

For Appellant: *Captain Audrey H. Liebross* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Major Edwin D. Selby* (on brief).

For Appellee: *Captain Kathy J.M. Peluso* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Larry D. Williams* (on petition); *Captain Frederick A. Johnson.*

Opinion of the Court

on

Motion to Admit Exhibits

COX, Judge:

Contrary to his pleas, appellant was convicted of possessing and distributing 0.7 grams of cocaine (specification 1 of the Charge), and using cocaine (specification 2 of the Charge), in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The military judge, sitting alone as a general court-martial, sentenced appellant to a bad-conduct discharge, total forfeitures, confinement at hard labor for 5 years and 6 months, and reduction to the lowest enlisted pay grade.[1] The trial was conducted on June 26, 1984, at Fort Clayton, Panama. The intermediate reviewing and appellate authorities respectively approved and affirmed the findings and sentence. Appellant petitioned this Court for a grant of review of the following issue:

> WHETHER THE RULE OF *UNITED STATES V. OLINGER*, 12 M.J. 458 (C.M.A.1982), THAT SENTENCE APPROPRIATENESS SHOULD BE DETERMINED WITHOUT COMPARISON TO UNRELATED SENTENCES, IS UNCONSTITUTIONAL UNDER *SOLEM V. HELM*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), IN CASES WHERE COMPARISON MAY SHOW THAT THE MILITARY JUDGE HAS ESTABLISHED AN UNCONSTITUTIONAL SENTENCING SCHEME.

---

1. The maximum sentence to confinement appellant might have received under the specifications was 20 years.

In addition, appellant moved to admit Defense Appellate Exhibits A and B. Defense Appellate Exhibit A is a series of five court-martial promulgating orders from drug cases that were allegedly similar to appellant's. The cases which these orders represent were all tried at Fort Campbell, Kentucky, in 1983, by the same military judge who sat in appellant's case. Defense Appellate Exhibit B consists of three other promulgating orders from drug cases that are supposedly dissimilar to appellant's, but are allegedly the only other drug cases tried by that judge at Fort Campbell in 1983. Appellant sought unsuccessfully to have the Court of Military Review take judicial notice of these eight orders. We ordered oral argument on the motion only. 20 M.J. 192 (1985).

The gist of appellant's argument is that the military judge's sentencing pattern in drug cases was disproportionately severe in comparison to the Army-wide sentencing pattern for such cases. Appellate Exhibits A and B were intended to illustrate the trial judge's pattern. Apparently, appellant wanted the Court of Military Review to take these exhibits into consideration in assessing sentencing appropriateness in his case, under the authority granted it by Article 66(c), UCMJ, 10 U.S.C. § 866(c). No evidence has been introduced or tendered as to what the overall sentencing pattern for the Army might be in such cases.[2] Presumably, before the Court of Military Review, appellant was relying on that court's empirical knowledge of sentence averages. The Court of Military Review concluded that it was unnecessary to compare specific sentences in other cases in order to discharge its responsibility to review sentences under Article 66(c). Moreover, the Court concluded:

It is well settled that, except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases, such as those of accomplices, sentence appropriateness should be determined without reference to or comparision with the sentences received by other offenders. *See United States v. Snelling*, 14 M.J. 267 (C.M.A.1982); *United States v. Olinger*, 12 M.J. 458, 460 (C.M.A.1982).

Unpublished opinion at 2.

The origin of this Court's supposed preference against sentence comparison is generally thought to be *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 27 C.M.R. 176 (1959). Interestingly, there the tables were somewhat turned on the accused. The law officer had instructed the court-martial, *inter alia:*

"In special circumstances to meet the needs of local conditions, sentences more severe than those normally adjudged for similar offenses may be necessary.... Imposition by courts of inadequate sentences upon persons in the military convicted of crimes which are punishable by civil courts, tends to bring the military forces into disrepute as lacking in respect for the criminal laws of the community wherein the court is sitting."

*Id.* at 105, 27 C.M.R. at 179. It was in this light that the principal opinion concluded that "accused persons are not robots to be sentenced by fixed formulae but rather, they are offenders who should be given individualized consideration on punishment." *Id.* at 106, 27 C.M.R. at 180. Further, "proper punishment should be determined on the basis of the nature and seriousness of the offense and the character of the offender, not on many variables not susceptible of proof." *Id.* at 107, 27 C.M.R. at 181. This latter remark was an apparent reference to difficulty of meaningfully comparing sentences from unrelated cases.[3]

---

2. In oral argument before this Court, appellate defense counsel avers that such statistical information is obtainable through Army computer resources and will be presented to the Court of Military Review if the requested remand is granted.

3. In this regard, the principal opinion noted that one of the yardsticks mentioned is the penalties adjudged in other cases for similar offenses. It seems to us such a measuring rod fails to take into account the peculiarities of the military practice. In this in-

In later cases, this general principle of non-comparison was extended to situations where allegedly similarly situated service-members received lesser punishments than the particular accused. *United States v. Snelling* and *United States v. Olinger,* both *supra.*

The United States Supreme Court has written recently on the subject of sentence proportionality. In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the accused was sentenced to life imprisonment without possibility of parole. He had been convicted of "uttering a 'no account' check for $100"—a "Class 5 felony," the maximum punishment for which would have been imprisonment for 5 years and a $5,000 fine. 103 S.Ct. at 3005 and n. 5. However, because Helm had at least three prior convictions (he had actually been convicted of six "nonviolent" felonies), he was subject to South Dakota's recidivist statute which enhanced the punishment to that of a Class 1 felony, the maximum punishment for which was life imprisonment and a $25,000 fine. Moreover, in South Dakota, parole was not available for persons sentenced to life imprisonment. Only the Governor had the authority to pardon prisoners or commute their sentences. *Id.* at 3005.

In reviewing its eighth amendment cases, the Supreme Court reiterated its previous holdings that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id.* at 3009. The three factors identified by the Court in reviewing sentences under the Eighth Amendment are: (1) "the gravity of the offense and the harshness of the penal-ty"; (2) a comparison with "the sentences imposed on other criminals in the same jurisdiction"; and (3) a comparison of "the sentences imposed for commission of the same crime in other jurisdictions." 103 S.Ct. at 3010.

As to the first factor, the Court noted that Helm was convicted of "one of the most passive felonies a person could commit," *id.* at 3012 (quoting from *State v. Helm,* 287 N.W.2d 497, 501 (S.D.1980) (Henderson, J., dissenting), and yet his "sentence is the most severe punishment that the State could have imposed on any criminal for any crime." *Id.* at 3013. Next, comparing Helm's sentence to those of "other criminals in the same jurisdiction," *id.* the Court observed that only the most serious types of offenses were punishable by life imprisonment, even after a second and third offense, and "there was a large group of very serious offenses for which life imprisonment was not authorized, including a third offense of heroin dealing or aggravated assault." *Id.* at 3014. Thus, the Court concluded that "Helm has been treated in the same manner as, or more seriously than, criminals who have committed far more serious crimes." *Id.* Lastly, "compar[ing] the sentences imposed for commission of the same crime in other jurisdictions," the Court found that "Helm was treated more severely than he would have been in any other State." *Id.* at 3014, 3015. As a result of applying these factors, the Court concluded that Helm's sentence was "significantly disproportionate to his crime, and is therefore prohibited by the Eighth Amendment." *Id.* at 3016.

stance, we have some nine specifications alleging numerous types of offenses all consolidated for the purpose of sentence. It would be almost impossible for members of the court-martial to remember or find a similar case of consolidation or nine offenses which resemble those alleged in these specifications.

10 U.S.C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959).

The instant case illustrates the problem. Of the eight promulgating orders proffered, none concerned cocaine offenses, as did appellant's case. Two involved lysergic acid diethylamide (LSD), five involved marihuana, and one involved LSD and marihuana. Five of the eight cases were guilty pleas; appellant contested his case. Only one of the cases involved the use of a prohibited substance (marihuana); appellant used cocaine. In four of the eight cases, the accused was sentenced to a dishonorable discharge; appellant received a bad-conduct discharge. All eight cases were tried in a different country and a different year from appellant's case. No evidence of the extenuating, mitigating, or aggravating circumstances that may have been presented in those cases is apparent in the promulgating orders.

In *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the accused was convicted of a capital crime and sentenced to death. The Court of Appeals had ordered issuance of a writ of habeas corpus on the grounds that the California Supreme Court did not "compare Harris's sentence with the sentences imposed in similar capital cases and thereby ... determine whether they were proportionate," as required by the United States Constitution. 104 S.Ct. at 874 (footnote omitted). The Supreme Court reversed the Court of Appeals. According to the Supreme Court:

> Traditionally, "proportionality" has been used with reference to an abstract evaluation of the appropriateness of a sentence for a particular crime. Looking to the gravity of the offense and the severity of the penalty, to sentences imposed for other crimes, and to sentencing practices in other jurisdictions, this Court has occasionally struck down punishments as inherently disproportionate, and therefore cruel and unusual, when imposed for a particular crime or category of crime. *See, e.g., Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) ....

> The proportionality review sought by Harris, [and] required by the Court of Appeals, ... is of a different sort. This sort of proportionality review presumes that the death sentence is not disproportionate to the crime in the traditional sense. It purports to inquire instead whether the penalty is nonetheless unacceptable in a particular case because disproportionate to the punishment imposed on others convicted of the same crime. The issue in this case, therefore, is whether the Eighth Amendment, applicable to the States through the Fourteenth Amendment, requires a state appellate court, before it affirms a death sentence, to compare the sentence in the case before it with the penalties imposed in similar cases if requested to do so by the prisoner. Harris insists that it does and that this is the invariable rule in every case. Apparently, the Court of Appeals was of the same view. We do not agree.

*Id.* at 875–76 (footnote omitted).

Appellant's complaint is virtually identical to that of Harris, which the Supreme Court rejected. Basically, appellant argues that his sentence was more severe than those of persons convicted of the same offense(s) in the same jurisdiction, *i.e.*, the military. He does not contend, as in *Solem v. Helm, supra*, that the range of punishments for possession, distribution, and use of cocaine is out of line with the gravity of the offenses; or that more serious types of offenses are punished less severely in the same jurisdiction; or that the range of sentences for drug offenses is disproportionate with those for drug offenses in other jurisdictions.[4] In light of the Supreme Court's holdings, appellant's argument is unpersuasive.

In our opinion, the basic objections identified by this Court in *United States v. Mamaluy, supra*, are still valid. From the mere face of court-martial promulgating orders or similar documents, it is simply not possible to assess the multitude of aggravating and mitigating sentencing factors considered in the cases they represent. Further, appellant's approach cuts both ways. If the defense has a right to introduce sentences from other cases, how could the prosecutor be denied the same right? What is good for the goose is good for the gander.

---

4. Even if appellant could demonstrate that drug sentences are more severe in the military, as a whole, than in civilian jurisdictions, we are satisfied that such differences can be readily justified by an urgent necessity in the military that is simply not present in the civilian community. *See Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Committee for GI Rights v. Callaway*, 518 F.2d 466 (D.C.Cir.1975); and *Murray v. Haldeman* 16 M.J. 74 (C.M.A.1983).

As indicated, some of our cases have tended to suggest that a court's reference to the sentences in other cases is flatly improper. *E.g., United States v. Snelling, United States v. Olinger,* and *United States v. Mamaluy,* all *supra.* Actually, this is quite misleading. We are, of course, well aware that the experienced and professional military lawyers who find themselves appointed as trial judges and judges on the courts of military review have a solid feel for the range of punishments typically meted out in courts-martial. Indeed, by the time they receive such assignments, they can scarcely help it; and we have every confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case in which a military judge imposes sentence or a court of military review assesses for sentence appropriateness. Thus, to hold that a trial or appellate court may not consider the sentences in other cases would be folly. We simply hold that these courts cannot be *required* to consider such other sentences. Thus, if a court concludes that further edification in the area of sentence averages is unnecessary, we will respect that judgment.

Accordingly, the United States Army Court of Military Review did not err in refusing to admit Defense Appellate Exhibits A and B, or to specifically consider the cases represented therein.

The motion to admit Defense Appellate Exhibits A and B, and to order the Court of Military Review to consider same, is denied, and the petition for grant of review is denied.

Judge FLETCHER did not participate.

EVERETT, Chief Judge (concurring):

To perform their statutory task of determining sentence appropriateness, the members of a Court of Military Review must know something about the range of sentences typically adjudged for certain offenses. To some extent, they will develop this knowledge by reviewing hundreds of court-martial records; and we must largely rely on these judges to decide how much they need to supplement their experience by receiving additional information about sentences imposed in cases other than those immediately before them for review. Only when another case—for example, that of an accomplice—is "closely related" to that being reviewed, have we ruled that the sentence adjudged in the earlier case *must* be considered in determining an "appropriate" sentence. *Cf. United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982), quoting *United States v. Olinger,* 12 M.J. 458, 460 (C.M.A.1982).

The majority opinion—although it does not *require* the Courts of Military Review to consider average-sentence information—permits such consideration. Certainly, the court below would have committed no error if it had accepted the information offered by the accused in this case. Indeed, in the present case, had trial defense counsel "forward[ed such material]" for attachment to the record of proceedings" so that it could "be considered in behalf of the accused on review," *see* Article 38(c), Uniform Code of Military Justice, 10 U.S.C. § 838(c), the information in question already would have been before the Court of Military Review for its consideration. Hopefully, as the Armed Services begin to use automated systems for compiling and retrieving sentence data, the Courts of Military Review will not hesitate to consider information about typical or average sentences, for to do so should help reduce unwarranted disparity in court-martial sentencing.