****CORRECTED COPY – DESTROY ALL OTHERS****

# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant DONALD A. DAVIS
## United States Air Force

## ACM 38359

## 18 July 2014

Sentence adjudged 31 January 2013 by GCM convened at Joint Base San Antonio–Lackland, Texas. Military Judge: Roger A. Drew, Jr.

Approved Sentence: Bad-conduct discharge, hard labor without confinement for 3 months, and reduction to E-3.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Colonel Don M. Christensen; Colonel William R. Youngblood; and Gerald R. Bruce, Esquire.

Before

MARKSTEINER, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

WEBER, J., delivered the opinion of the Court, in which MARKSTEINER, S.J., joined. MITCHELL, S.J., filed a separate opinion concurring in part and dissenting in part.

WEBER, Judge:

A general court-martial convicted the appellant, in accordance with his pleas, of one charge and specification of violating a lawful general regulation by wrongfully conducting a personal and sexual relationship with Airman First Class (A1C) CJ while

she was a trainee, in violation of Article 92, UCMJ, 10 U.S.C. § 892.[1]  A panel of officer members sentenced the appellant to a bad-conduct discharge, hard labor without confinement for 3 months, and reduction to the grade of E-3.  The convening authority approved the sentence as adjudged.  The appellant now challenges the appropriateness of his sentence.

*Background*

The appellant served as a military training instructor (MTI) at basic military training at Joint Base San Antonio–Lackland, Texas.  In 2012, a witness in an unrelated investigation stated that she believed the appellant had engaged in an inappropriate relationship with A1C CJ.  An investigation into this allegation, and the appellant's subsequent guilty plea, revealed the relationship developed as follows.

While in basic training, A1C CJ was a student in a "brother flight" to the flight the appellant instructed.  During this time, she and the appellant had limited communication and normal interaction.  After basic training, A1C CJ attended technical training school at nearby Fort Sam Houston.  During this time, A1C CJ reviewed a Facebook web page created for her basic training flight.  From that page, she navigated to a Facebook page for the appellant's flight and found the appellant's Facebook profile.  She sent the appellant a "friend" request, and he accepted.

A1C CJ and the appellant exchanged messages on Facebook.  While these messages were initially professional in nature, after a time they became more personal, with A1C CJ asking for advice on relationship issues.  A1C CJ then requested the appellant's cell phone number.  At first he declined, but after she asked him a few more times he provided his number, and the two began exchanging text messages.

These text messages turned more personal, and the appellant and A1C CJ discussed plans to meet in person.  They met for dinner and about a week later met again.  This time, they went to a hotel room and engaged in consensual sexual intercourse.  After this night, the two continued to communicate, but more sporadically.  A1C CJ completed technical training school and was transferred to her permanent duty assignment in Nevada, and communication between the two dwindled.  There is no evidence the two met in person again.

*Sentence Appropriateness*

The appellant challenges the appropriateness of his sentence.  He successfully moved to attach several documents to the record of trial evincing sentences adjudged and

---

[1] The appellant was acquitted of one charge and its specification for engaging in abusive sexual contact with a trainee and one charge and its specification for assaulting a trainee, in violation of Articles 120 and 128, 10 U.S.C. §§ 920, 928.

approved in other cases involving similar charges. Based on these documents, he asserts that his sentence is inappropriately severe based on sentence comparison grounds. Alternatively, he asserts that his sentence is inappropriately severe based on mitigating factors in his case.

This Court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In exercising sentence appropriateness review, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). An appellant bears the burden of demonstrating that any cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If the appellant meets his or her burden to demonstrate closely related cases involve highly disparate sentences, the Government "must show that there is a rational basis for the disparity." *Id.*

We first reject the appellant's invitation to engage in sentence comparison. The cases he cites do not involve coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers. The most that can be said about the cases the appellant cites is that each case involved similar crimes at Joint Base San Antonio–Lackland, and in each of the cases the appellant cites, no punitive discharge was adjudged. This falls short of the requirement that the referenced cases be "closely related." Despite our finding that the referenced cases are not closely related, we have considered the referenced cases in our determination as to whether the sentence, standing alone, is inappropriately severe.

Considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial, we find the

adjudged and approved sentence, including the bad-conduct discharge, is not inappropriately severe. For the reasons cited in our dissenting colleague's persuasive opinion, we seriously considered ruling to the contrary. The appellant's nine-year service record was generally positive apart from this incident. In addition, A1C CJ was not negatively impacted by the relationship, and she did not report the matter until investigators learned about it from a witness in another investigation. A1C CJ's sentencing letter on the appellant's behalf demonstrates that the relationship between the two was completely consensual. Nonetheless, we do not find these aspects of this case sufficiently persuasive to set aside the bad-conduct discharge.

At least three times in the months leading up to his personal and sexual relationship with A1C CJ, the appellant certified that he had been briefed on a command regulation prohibiting such relationships between instructors and trainees, even when those trainees have moved to a different phase of training. The appellant knowingly and intentionally violated this regulation by developing a relationship with A1C CJ that grew increasingly personal and then sexual. He did this despite his position as a non-commissioned officer charged with the sensitive and crucial task of molding young adults into Airmen. His actions also came just months after he received a letter of reprimand for inappropriately treating trainees in various ways. This letter of reprimand did not allege that the appellant engaged in any sort of sexual misconduct. However, the fact that the letter of reprimand failed to refocus the appellant's attention on the importance of maintaining proper conduct with trainees hardly speaks well for his rehabilitative potential.

We are also mindful of the fact that the record of trial contains no evidence of any improper conduct between the appellant and A1C CJ during basic training, and A1C CJ had moved on to a different phase of her training not associated with the appellant's duties by the time the relationship began. Nonetheless, the Air Force maintains legitimate concerns about control and abuse of power that warrant the prohibition against instructor–student relationships, even when a trainee has moved on to another phase of training. This is particularly true when, as here, the trainee attends technical school at another military installation in the same commuting area where basic training occurs. The Air Force undoubtedly needs to take decisive action against such relationships. The adjudged and approved bad-conduct discharge is fully consistent with the needs of good order and discipline, a fact the officer members stationed at Joint Base San Antonio–Lackland undoubtedly appreciated.[2] The fact that A1C CJ did not consider

---

[2] Our dissenting colleague suggests that this Court should review the appropriateness of the appellant's sentence with particular scrutiny given what the defense presented in its unlawful command influence motion. We agree that concerns over unlawful command influence were a primary reason this Court possesses sentence appropriateness power. We disagree that exercise of this power is appropriate in this case. The military judge appropriately denied the defense's motion for relief based on unlawful command influence, and there is no reason to speculate that the members' sentencing decision was influenced by inappropriate factors.

herself harmed by the relationship (and in fact pursued it) does not alleviate the harm caused to the Air Force and the basic training mission.

Finally, we note that the court-martial sentenced the appellant to no confinement and reduction only to the grade of E-3. While there is case law standing for the proposition that confinement for any period of less than a year is a less severe form of punishment than a bad-conduct discharge,[3] the fact remains that the members showed leniency in adjudging no confinement when the maximum sentence to confinement was two years and even trial defense counsel's sentencing argument conceded some amount of confinement was appropriate.

For these reasons, we hold that the appellant's sentence was not inappropriately severe.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[4] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and the sentence are

AFFIRMED.

Senior Judge MARKSTEINER participated in this decision prior to his reassignment.

MITCHELL, Senior Judge (concurring in part and dissenting in part):

While I would affirm the findings, I disagree with the majority's conclusion that the appellant's bad-conduct discharge was appropriate. The record of trial leaves no doubt that the relationship between A1C CJ and the appellant involved two consenting

---

[3] While it is difficult to establish mathematical equivalencies between different types of authorized punishments when evaluating sentence severity, there is authority to indicate shorter periods of confinement may be considered less severe than a bad-conduct discharge. *See United States v. Kent*, 9 M.J. 836, 838 (A.F.C.M.R. 1980) ("[W]e do note that a bad conduct discharge adjudged by a general court-martial may be equated to one year's confinement at hard labor."); *United States v. Brown*, 32 C.M.R. 333, 336 (C.M.A. 1962) ("Considering the consequences of a bad-conduct discharge, we entertain no doubt that confinement at hard labor for six months and forfeiture of pay for a like period is a less severe penalty . . . .")

[4] We note that the record of trial fails to include the attachments to Appellate Exhibit XXII, a defense motion alleging unlawful command influence. Article 54, UCMJ, 10 U.S.C. § 854, requires a complete record of trial be prepared for this case, and Rule for Courts-Martial 1103(b)(2)(D)(v) requires appellate exhibits to be included as part of the record of trial. However, "insubstantial" omissions from a record of trial do not render the record incomplete. *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Id.* We find that the record of trial is complete despite the omission of the attachments to Appellate Exhibit XXII. The defense motion itself and the discussion about the motion contained in the record provide this Court with a sufficient sense of the apparent contents of those exhibits.

adults. As the majority notes, it was A1C CJ who sought out the appellant on Facebook, it was A1C CJ who primarily steered their text messages toward more personal topics, and it was A1C CJ who persisted in requesting the appellant's cell phone number even after he initially declined to provide it. A1C CJ was harmed in no way by the relationship, as she made clear in her letter provided on behalf of the defense in sentencing:

> Our relationship was 100% voluntary on my part and was completely consensual. I initiated our contact and I never felt pressured by SSgt Davis. I honestly pursued a relationship with him because I enjoyed his company. In my opinion, SSgt Davis is a good person. He was a good friend and I still think highly of him. I feel like he may be portrayed unfairly as some sort of monster who took advantage of me, but that is not true. While I was in BMT, I barely saw him and he was no different than any other MTI. I initiated our conversation through Facebook and that was when things changed, but only because I wanted them to. It seems like SSgt Davis is being treated unfairly for our relationship.

> . . . I would request that the court consider a lenient punishment and please take this letter into consideration. I would gladly continue to serve alongside SSgt Davis in the Air Force and our relationship has not changed my opinion about my service or the Air Force.

The military justice system has been criticized for its perceived failure to provide victims of offenses with meaningful input into the disposition of cases; a bad-conduct discharge runs contrary to A1C CJ's clear wishes.[5]

A bad-conduct discharge is also inappropriately severe based on the appellant's positive service record. The majority highlights the letter of reprimand (LOR) the appellant received. The conduct described in that LOR was for making a basic trainee deliver the mail for his entire flight to the mailbox, using profanity, and, in a single incident, overturning a table and throwing a shoe at a wall when he lost his temper in front of his flight.[6] I have no reason to doubt his commander's decision that this behavior was not serious enough to warrant more than an LOR. The majority also omits any substantive analysis of the appellant's nine-year career. His EPR includes documentation that while serving as an MTI he performed the Heimlich maneuver on a choking Airman, likely saving that person's life. A non-commissioned officer recounted that when the

---

[5] A1C CJ was 24 years old, no longer in training, and had been at her first duty station for about 15 months when she wrote her statement on behalf of the appellant.

[6] It is not clear from the letter of reprimand (LOR) whether this display, "following poor evaluation results," was intended by the appellant to convey disappointment in the flight's performance. Although the LOR appears to indicate the appellant submitted a written response, his response was not included in the Government's exhibit, and the LOR was admitted without defense objection.

appellant heard a neighbor's smoke alarm sounding, he went to the house to find a teenager with burn marks on her arms who was trying to extinguish a fire. The appellant extinguished the fire, alerted the paramedics, and treated the teen until they arrived. In addition to the appellant's two deployments and numerous awards and decorations, the record of trial indicates that the appellant was an unusually effective MTI, setting a squadron record for the number of consecutive honor flights led. The appellant's overall service record mitigates against an approved sentence of "severe punishment for bad conduct." *See* Department of the Army Pamphlet 27–9, Military Judges' Benchbook, § 3, ¶ 8–3–25 (01 January 2010).

Finally, this Court must be mindful of the reasons Congress bestowed sentence appropriateness powers upon it. Sentence appropriateness authority provides a basis to ensure relative uniformity of sentences, but an equally important concern is to alleviate any hint of unlawful command influence: "[A]llowing a panel of experienced judges to review sentences was seen as an important check to ensure commanders were not influencing courts-martial to hand down excessive sentences." Lieutenant Colonel Jeremy S. Weber, *Sentence Appropriateness Relief in the Courts of Criminal Appeals*, 66 A.F. L. REV. 79, 90 (2010).[7]

In this case, the defense presented evidence to indicate that this court-martial took place during a time of tremendous scrutiny over sexual misconduct at Lackland Air Force Base. The appellant's court-martial began on 28 January 2013. That same night, the Air Force Times published an article that included statements made by the Chief of Staff of the Air Force (CSAF), at a Congressional hearing, where he called for a presumptive discharge for military training instructors who have consensual relationships with recruits.[8] Kristin Davis, *Welsh: Guilty MTIs should be kicked out*, A.F. TIMES, 28 January 2013, *available at* http://www.airforcetimes.com//article/20130128/NEWS/ 301280322/Welsh-Guilty-MTIs-should-kicked-out. While not part of the CSAF's

---

[7] Judge Weber's article lays out an impressively detailed and thoroughly informative explanation of the historical context from which was born the Courts of Criminal Appeals' truly unique authority to evaluate sentence appropriateness under the UCMJ.

[8] The article stated:

> Training instructors who have relationships with recruits, whether consensual or otherwise, don't belong in the military, the Air Force chief of staff told lawmakers during a Jan. 23 hearing into a basic training sex scandal that has ensnared at least 32 trainers at Joint Base San Antonio–Lackland in less than two years.

> "An individual who is serving as a military training instructor who has a relationship like this with a trainee has no place in our Air Force," Gen. Mark Welsh testified before the House Armed Service Committee. "There should be a presumptive sanction under some mechanism to discharge them."

Kristin Davis, *Welsh: Guilty MTIs should be kicked out*, A.F. TIMES, 28 January 2013, *available at* http://www.airforcetimes.com//article/20130128/NEWS/301280322/Welsh-Guilty-MTIs-should-kicked-out.

testimony, the article highlighted three military instructors who did not receive a punitive discharge in their earlier courts-martial for improper relationships with trainees, the potential difficulties and delay in an administrative discharge, and that "some lawmakers have expressed outrage that the MTIs were not automatically kicked out of the service as part of their convictions." *Id.* The overall tone of the article implies that a court-martial-adjudged punitive discharge is the minimally acceptable punishment. When the members were called the next day, all of them stated they were aware of media reports about "the MTI cases" and three of them specifically stated they were aware of congressional testimony by the CSAF about this issue. While I do not take any issue with the military judge's ruling in denying the defense's motion alleging unlawful command influence, the matters raised in the defense's motion should cause this Court to review the sentence appropriateness issue with heightened scrutiny.

I find the appellant's bad-conduct discharge inappropriately severe, and I would affirm only so much of the sentence as includes hard labor without confinement for 3 months, and reduction to the grade of E-3.[9] I therefore respectfully dissent.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[9] To the extent that some may perceive the remainder of the appellant's sentence to be too lenient, the possibility exists to mitigate the appellant's punitive discharge to some lesser form of punishment, such as some period of confinement. However, given the time that has elapsed since the appellant's January 2013 court-martial, I would decline to do so.