# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**D.C. KING, A.Y. MARKS, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

**v.**

**SAMUEL T. WIDAK**
**CORPORAL (E-4), U.S. MARINE CORPS**

**NMCCA 201500309**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 19 June 2015.
**Military Judge:** Maj N.A. Martz, USMC.
**Convening Authority:** Commanding General, Command Element, II Marine Expeditionary Force, Camp Lejeune, NC.
**Staff Judge Advocate's Recommendation:** Col G.W. Riggs, USMC.
**For Appellant:** Louis J Puleo, Esq.; CAPT Glenn Gerding, JAGC, USN.
**For Appellee:** LCDR Clayton G. Trivett, JAGC, USN; Maj Tracey L. Holtshirley, USMC.

**22 March 2016**

---------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------
THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

PER CURIAM:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of one specification each of conspiracy, unlawful sale of military property of a value of more than $500.00, wrongful use of a controlled substance, larceny, and housebreaking, in violation of Articles 81, 108, 112a, 121, and 130, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 908, 912a, 921, and 930. The military judge sentenced the appellant to reduction to pay grade E-1, confinement for 36 months and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant now claims he received a disparately severe sentence compared to other closely related cases. We disagree. The findings and sentence are correct in law and fact, and there is no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

**Background**

This case is one of several involving the theft and sale of military property from Marine Corps warehouses and armories. In the appellant's case, both the staff judge advocate's recommendation and the CA's action listed *United States v. Crockett*, *United States v. Langford*, *United States v. Rostmeyer* and *United States v. Swafford* as companion cases.

As a lance corporal (LCpl), the appellant was an armorer in the 8th Engineer Support Battalion armory at Camp Lejeune, North Carolina.[1] In February of 2013, he was involved in an automobile accident and prescribed Hydrocodone for pain. Shortly thereafter, he met then-Sergeant (Sgt) Rostmeyer, who quickly began asking him to steal military gear from the appellant's worksite and provide it to Rostmeyer, who would then sell it to civilians. The appellant did so. Soon after, the appellant met Rostmeyer's roommate, then Sgt Crockett and the three of them entered a conspiracy to break into military warehouses, steal military property, and sell it for profit. As part of their conspiracy, the appellant broke into warehouses, stole military property, stood lookout while Rostmeyer broke into warehouses to steal military property, and allowed Rostmeyer into his unit's warehouse to steal military property. Finally, the appellant stole items from his command's armory, including over one thousand bayonets, and personally sold those items directly to a third party. The total value of the military property the appellant pleaded guilty to stealing was approximately $400,000.00. For his part in these activities, the appellant received money or Hydrocodone from Rostmeyer.

Although the appellant was only charged with conspiring with Rostmeyer and Crockett, other Marines were also involved with Rostmeyer as part of this criminal activity, including then-Master Sergeant Langford and then-LCpl Swafford. As a result of their involvement in these thefts, all five Marines had their cases referred to courts martial, where they all pleaded guilty and received the following sentences:

> On 30 July 2014, Swafford was convicted at a special court-martial of single specifications of conspiracy, wrongful sale of military property, larceny, and housebreaking. He was sentenced to 225 days' confinement, a $2,000.00 fine, reduction to pay grade E-1, and a bad-conduct discharge;

> On 25 September 2014, Crockett was convicted at a special court-martial of conspiracy, and single specifications of wrongful sale of military property, larceny, and housebreaking. He was sentenced to four months' confinement, reduction to pay grade E-1, and a bad-conduct discharge;

> On 26 August 2014, Langford was convicted at a general court-martial of conspiracy, wrongful sale of military property, larceny, and housebreaking. He was sentenced to 15 months' confinement, total forfeitures, reduction to pay grade E-1, and a bad-conduct discharge;

> On 16 October 2014, Rostmeyer was convicted at a general court-martial of conspiracy, wrongful sale of military property, wrongful use of a controlled substance, larceny, housebreaking, and solicitation. The military judge merged the conspiracy and solicitation offenses for sentencing, and sentenced the appellant to four years of confinement, reduction to pay grade E-1, and a dishonorable discharge. Pursuant to a

---

[1] At times the appellant was the armory chief. Prosecution Exhibit 3 at 1.

pretrial agreement, the CA approved only a bad-conduct discharge and suspended all confinement in excess of 43 months.

**Discussion**

The appellant contends his sentence is inappropriately severe considering the disparate forums and sentences of his co-conspirators, and Langford and Swafford. He argues this court should remedy that disparity by affirming a sentence of no more than 15 months' confinement and a bad-conduct discharge. The Government responds that the appellant's case is not closely related to all four cases listed above and that there are "good and cogent" reasons for any disparity.

We review sentence appropriateness *de novo*. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We review the appropriateness of a sentence generally without reference or comparison to sentences in other cases. *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985). We will engage in sentence comparison only "'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *Ballard*, 20 M.J. at 283).

When arguing for relief based on sentence disparity, the appellant must demonstrate "that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.' If the appellant meets that burden . . . then the Government must show that there is a rational basis for the disparity." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). "Closely related" cases involve "offenses that are similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly,* 40 M.J. 558, 570 (N.M.C.M.R. 1994)*; see also Lacy*, 50 M.J. at 288.

In assessing whether sentences are highly disparate, we are "not limited to a narrow comparison of the relative numerical values of the sentences at issue," but may also consider "the disparity in relation to the potential maximum punishment." *Lacy*, 50 M.J. at 287. Moreover, co-conspirators are not entitled to similar sentences and disparity between them does not necessarily render one sentence inappropriate, "provided each military accused is sentenced as an individual." *United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001) (citations omitted).

Finally, we recognize that a vast difference in maximum punishments can result from disposition forums. A CA's discretion on "the selection of the appropriate forum for disposition is part of prosecutorial discretion," and "[d]ecisions on how to process a case are not considered *de novo* at the reviewing court level." *Kelly*, 40 M.J. at 570. If cases are closely related yet result in widely disparate disposition, we must instead decide whether the disparity in disposition also results from good and cogent reasons. *Id.*

The appellant's first argument is that his dishonorable discharge is "highly disparate, severe, and unjust" when this court takes into account the appellant's role in the conspiracy. We disagree.

We will normally compare the adjudged sentences in our "closely related" case analysis. *Sothen*, 54 M.J. at 296 (citing *Ballard*, 20 M.J. at 283 ("The Courts of Criminal Appeals are required to engage in sentence comparison only in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences *adjudged* in closely related cases.") (emphasis added). Other than to ensure that the appellant's approved sentence is one that "should be approved," Article 66(c), we generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement or a CA's lawful exercise of his authority to grant clemency to an appellant. *See*

3

*United States v. Nerad*, 69 M.J. 138, 146, (C.A.A.F. 2010) (statutory phrase "should be approved" does not involve a grant of unfettered discretion.). Nor should we. Clemency and pretrial agreements involve highly subjective processes which this court is ill-equipped to second guess and we decline to do so here. *But see Kelly*, 40 M.J. at 570 ("our discretion clearly should be exercised in cases in which the disparity in disposition or sentence results from a factor that seriously detracts from the appearance of fairness and integrity in military justice proceedings."). Based upon these principles, the appellant has failed to establish that his sentence is "highly disparate" to Rostmeyer's.

Regarding the three other Marines, we find rational bases for any sentencing disparity and cogent reasons for differences in dispositions. Crockett agreed to cooperate with the Government and testify against the appellant and Langford.[2] The record and Swafford's pleas indicate Swafford was much less involved in the conspiracy than the appellant implies. While Langford stole military property on "multiple occasions" and was the senior member of the group, there is no evidence that either he, Crockett, or Swafford stole property from an armory, abused their legitimate access to a military building for official duties by granting it to thieves, and none of the three were charged with drug offenses.

Finally, the disparity between the appellant's sentence and the 40 year potential maximum confinement for the crimes of which he was convicted is much greater than the disparity between his sentence and that of his co-conspirators. *See Lacy*, 50 MJ at 289.

We also note that the appellant specifically bargained for a pretrial agreement that allowed for the approval of the sentence of which he now complains. Moreover, he did so several months after Rostmeyer was sentenced. Argument that this court should now affirm a sentence similar to Rostmeyer's approved sentence implies a request for clemency, which is the sole prerogative of the CA. *United States v. Healy*, 26 M.J. 394 (C.M.A. 1988); RULE FOR COURTS-MARTIAL 1107(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

Routinely robbing military facilities, providing access for thieves to rob military warehouses, stealing weapons from the very armory he supervised and then selling this material to those who in turn sold to "interstate and overseas buyers," *United States v. Rostmeyer*, No. 201500095, 2015 CCA LEXIS 532 at *2-3, unpublished op. (N.M.Ct.Crim.App. 30 Nov 2015) (per curiam), are the very types of activities that merit separation "under conditions of dishonor." R.C.M. 1003(b)(8)(B).

## Conclusion

The approved findings and the sentence are affirmed.

For the Court



R.H. TROIDL
Clerk of Court

---

[2] *See* PE 4.