# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Cadet CHRISTOPHER E. MONGE**
**United States Army, Appellant**

ARMY 20170295

United States Military Academy
James E. Ewing, Military Judge
Colonel James Robinette, II, Staff Judge Advocate

For Appellant: Colonel Elizabeth G. Marotta, JA; Major Julie L. Borchers, JA; Captain Steven J. Dray, JA (on brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Major Wayne H. Williams, JA; Captain Joshua Banister, JA (on brief).

14 December 2018

---------------------------------
SUMMARY DISPOSITION
---------------------------------

Per Curiam:

In this appeal we address appellant's claim that his sentence to a dismissal and twenty-five months confinement should be disapproved because it is highly disparate to the sentence received by a co-actor, Cadet Tevin Long. We conclude otherwise and affirm the findings and sentence.

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of one specification each of conspiracy to introduce and distribute controlled substances onto the United States Military Academy (USMA), wrongful use of oxymorphone, and three specifications each of wrongful introduction of and distribution of controlled substances at USMA, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 912a (2012) [UCMJ]. Although the military judge sentenced appellant to a dismissal and thirty months confinement, the convening authority, pursuant to a pretrial agreement, approved only so much of the sentence as extended to a dismissal and twenty-five months confinement

This case is before us for review pursuant to Article 66, UCMJ.

## BACKGROUND

### A. *Appellant's involvement with drugs at USMA.*

As a cadet at USMA, appellant frequently and wrongfully ingested oxycodone, oxymorphone, alprazolam, and cocaine. His involvement with illicit substances also involved other cadets.

Appellant served as the lead cadet, or "kingpin," in a scheme to wrongfully introduce and distribute oxycodone, alprazolam, and cocaine at USMA. Appellant, along with Cadets Jaelen Gadson, Jared Rogers, Joshua Bobo, Jalen Swett, and Tevin Long, engaged in a year-long conspiracy to introduce and distribute oxycodone, alprazolam, and cocaine at USMA. The appellant's co-actors placed orders for the drugs with appellant in person or via text message. Appellant would then travel with Cadet Gadson, in a car provided by Cadet Rogers, to Pennsylvania and Newberg, New York to meet with "Gus," a barber at USMA, to obtain these drugs for himself and his co-actors.

Appellant's involvement in illicit substances apparently extended beyond this conspiracy. Appellant served as a manager on the USMA men's lacrosse team. He used this position to facilitate drug sales to other members of the lacrosse team. During team trips, he used his spare time to obtain oxycodone from local drug dealers, which he would then distribute to members of the team.

According to the stipulation of fact admitted at trial, appellant "conducted over 100 unlawful sales of oxycodone, alprazolam, and cocaine," and "facilitated drug use by over 40 USMA cadets." This included not only members of the lacrosse team, but the USMA football and hockey teams as well.

### B. *Cadet Long's involvement with drugs at USMA.*[1]

Cadet Long, in addition to receiving drugs and participating in the conspiracy led by appellant, had his own drug connection and participated in a similar conspiracy with Cadets Gadson and Rogers to introduce and distribute oxycodone at USMA. Cadet Long on various occasions would travel with Cadet Gadson, in Cadet Rogers car, to New Jersey in order to purchase the drug from a person named "Brincat." On one such occasion, Cadet Long purchased alprazolam for his own personal use.

---

[1] As the issue before us involves a sentence comparison, we take judicial notice of Cadet Long's record of trial. *See United States v. Smith*, 56 M.J. 653, 659 n.7 (Army Ct. Crim. App. 2001).

Cadet Long's distribution of the drugs obtained was largely limited to members of the conspiracy led by appellant. As described in his stipulation of fact, Cadet Long exchanged oxycodone with appellant as well as Cadets Gadson, Rogers, Bobo, and Swett in what was described as "insider training." However, although not charged, Cadet Long admitted to providing oxycodone to his roommate on various occasions.

At his general court-martial, Cadet Long pleaded guilty under Articles 81 and 112a, UCMJ, to six specifications covering the conspiracy to introduce and distribute oxycodone at USMA, wrongful use of oxymorphone, wrongful introduction of oxymorphone and alprazolam, and wrongful distribution of oxymorphone. Although his pretrial agreement capped confinement at nine months confinement, the military judge, in addition to a dismissal, sentenced Cadet Long to thirty days confinement.

## LAW AND DISCUSSION

We review sentence appropriateness de novo. *United States v. Bauerbach*, 55 M.J. 501, 504 (Army Ct. Crim. App. 2001) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). Our authority in reviewing a sentence "is contained in Article 66, UCMJ, which provides in relevant part, that [this Court] 'may affirm only . . . the sentence or such part of the sentence, as it finds correct in law and in fact and determines, on the basis of the entire record, should be approved.'" *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018). In conducting this review, we consider many factors, including: "sentence severity; the entire record of trial; appellant's character and military service; and the nature, seriousness, facts, and circumstances of the criminal course of conduct." *United States v. Martinez*, 76 M.J. 837, 841-42 (Army Ct. Crim. App. 2017).

Appellant urges us, in conducting our sentence appropriateness review, to compare the sentences received by appellant and Cadet Long. We generally do not venture down the road of sentence comparison "except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). Appellant bears the burden of showing both that the cases are "closely related" and the sentences "highly disparate." *Id.* If appellant meets that burden, then it falls upon the government to show a rational basis for the disparity. *Id.*

As an initial matter, appellant's and Cadet Long's cases are closely related. First, when referring their cases to trial, the convening authority initially directed a joint trial. The military judge who ultimately heard Cadet Long's case granted defense counsel's unopposed motion for severance. Second, many of the offenses to

3

which both cadets pleaded guilty involved a common scheme. *See Lacy*, 50 M.J. at 288.

The question then is whether the appellant's and Cadet Long's sentences are highly disparate. "Whether a sentence is highly disparate is determined by a comparison of the adjudged sentences taking into account the disparity in relation to the potential maximum punishment." *Martinez*, 76 M.J. at 841 (citing, *inter alia*, *Lacy*, 50 M.J. at 289). Cadet Long faced a maximum punishment of confinement for thirty-nine years, but received less than one percent of that in his sentence to thirty days confinement. Appellant, who faced confinement for fifty years, [2] received a sentence of thirty months (later reduced to twenty-five months), or about five percent of the maximum punishment. We do not find these numbers highly disparate. *See Id.* ("While comparing the percentages of the potential maximum punishment is a useful consideration, it is not dispositive to the question of whether two sentences are highly disparate.").

Assuming, *arguendo*, appellant carried his burden in showing his sentence was highly disparate to that of Cadet Long, the government has offered countervailing rationale for the disparity. First, by appellant's own admission in his stipulation of fact, he was the "kingpin" of the drug operation in which he, Cadet Long, and three other cadets participated. Second, appellant committed more offenses than Cadet Long. Third, appellant's offenses had greater impact on the USMA community. While Cadet Long's offenses were largely limited to the five cadets involved in a conspiracy surrounding drugs and his roommate, appellant's offenses touched the USMA community more deeply. Appellant leveraged his position in the USMA athletic department to sell drugs. During road games in which the lacrosse team represented USMA, appellant obtained drugs and got high with members of the team. Appellant facilitated drug use by over forty USMA cadets.

Even if we found appellant's and Cadet Long's sentences highly disparate and the government's argument for the disparity unconvincing, appellant is still not entitled to relief. "Sentence comparison is only one of the aspects of sentence appropriateness." *Martinez*, 76 M.J. at 841 (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)). "[A]ppellant is not entitled to a windfall from an otherwise appropriate sentence just because a coactor . . . received a more lenient sentence." *Id.* at 842. Considering the entire record, and the fact that appellant benefitted from the negotiated cap on confinement in his pretrial agreement, we find appellant's sentence appropriate.

---

[2] Based upon his pleas of guilty, appellant faced confinement for one hundred five years; this number dropped to fifty years after the military judge merged certain specifications for sentencing.

4

## CONCLUSION

The findings and sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court