*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, THORNHILL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Grisel MARRERO**
Senior Chief (E-8), U.S. Navy
*Appellant*

**No. 202400167**

_____

Decided: 19 May 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Andrea K. Lockhart

Sentence adjudged 8 March 2024 by special court-martial tried at Naval Station San Diego, California, consisting of members with enlisted representation.[1] Sentence in the Entry of Judgment: reduction to E-7.

For Appellant:
*Lieutenant Colonel Todd F. Eslinger, USMC*

---

[1] Appellant elected to be sentenced by the military judge.

For Appellee:
*Lieutenant Colonel Allison Acosta, USMCR*
*Major Mary Claire Finnen, USMC*

Judge THORNHILL delivered the opinion of the Court, in which Chief
Judge HOLIFIELD and Senior Judge KIRKBY joined.

—————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

—————————

THORNHILL, Judge:

Appellant served as the Command Master Chief aboard USS *Manchester* (LCS 14).[2] Prior to deployment, in a moment of deckplate inspiration, Appellant and several members of the chief's mess agreed to install an unauthorized satellite receiver to the ship in order to provide Wi-Fi to the chief's mess. Rumors of the unauthorized Wi-Fi percolated throughout the ship. Over the course of four months, Appellant took extraordinary effort to hide the chief mess's unauthorized Wi-Fi. Appellant accessed the commanding officer's "suggestion box" and removed a note for the commanding officer regarding the unauthorized Wi-Fi. On three separate occasions, Appellant lied to the commanding officer:

- "No, the CPO mess does not have Wi-Fi on board,"[3]

- "There is absolutely no Wi-Fi onboard,"[4] and

- "No, the CPO mess does not have Wi-Fi on board."[5]

After receiving Appellant's repeated assurances that there was no clandestine Wi-Fi onboard the ship, the commanding officer held an all hands meeting. *With Appellant at her side,* the commanding officer assured the Sailors that there was no Wi-Fi on-board. When the unauthorized satellite receiver was

———————————

[2] Appellant was frocked to the grade of Master Chief Petty Officer.

[3] R. at 100. (Statement made in May of 2023).

[4] R. at 109. (Statement made in July of 2023).

[5] R. at 117. (Statement made in August of 2023).

ultimately discovered, Appellant doctored data usage reports to try and show that the Wi-Fi was only used while in port.

Appellant entered mixed pleas at her court-martial. She pleaded guilty to two specifications of dereliction of duty and three specifications of false official statement, in violation of Articles 92 and 107, Uniform Code of Military Justice (UCMJ).[6] She was convicted by members, contrary to her plea, of obstruction of justice for providing the doctored data usage reports, in violation of Article 131b, UCMJ.[7] Appellant was sentenced to reduction of one grade.[8] She now argues that her sentence was inappropriately disparate from the punishment of her eighteen co-actors because they received administrative punishment and did not lose rank. We are unconvinced.

We review sentence appropriateness de novo.[9] Appellant must show that her case was "closely related" to that of her co-actors and that her sentence was "highly disparate."[10] If Appellant succeeds, the Government must show that there is a rational basis for the disparity.[11]

Appellant led the effort to install the unauthorized Wi-Fi and—what truly separates her misconduct from that of her co-actors—she abused her rank, position, and trust by committing numerous crimes to conceal the group's actions and prolong the scheme's existence. The impact of Appellant's misconduct was "[h]uge," as it negatively affected both the operational effectiveness of the ship and the morale of the crew.[12] The ship was "left pier-side in Guam for the last 2 months of deployment when [it] could have been operational. . . ."[13] Appellant abused her rank and her special position of trust with the commanding officer

---

[6] 10 U.S.C. §§ 892, 907.

[7] 10 U.S.C. § 931b.

[8] This case is before us on direct appeal submitted by Appellant pursuant to Article 66(b)(1), UCMJ.

[9] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[10] *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)).

[11] *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999).

[12] R. at 492.

[13] R. at 492–93.

to conceal her misconduct and now contends that the loss of rank was too severe of a consequence by comparison. Assuming arguendo[14] that Appellant's case is closely related to her co-actors who received administrative punishment that did not include reduction in grade, Appellant's argument fails because her punishment is not highly disparate from theirs, and, even if it were, her position of leadership, closeness to the commanding officer, and the use of these special circumstances to conceal and prolong the prohibited conduct, provide a rational basis for any disparity between her loss of grade at court-martial and the nonjudicial punishment received by the remainder of the chief's mess. Appellant's misconduct and the negative effect it had on the ship, her commanding officer, and the United States Navy were magnified by the prominent position she held as the senior enlisted leader. There is nothing inappropriately disparate or inappropriately severe about the punishment she received.

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[15]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[14] The Court need not decide today whether a conviction in a judicial proceeding is a prerequisite for conducting the "closely related" analysis under *Sothen. See United States v. Behunin*, 83 M.J. 158, 161–62 (C.A.A.F. 2023) (suggesting only sentences adjudged at court-martial are to be used to determine if a particular sentence is disparate); *United States v. Swisher*, 85 M.J. 1 (C.A.A.F. 2024) (holding a "closely related" analysis is required where the co-actor was convicted in civilian criminal judicial proceeding); *see also United States v. Taper*, No. 202400014, 2025 CCA LEXIS 71, *9–10 (N-M. Ct. Crim. App. Feb. 25, 2025) (unpublished) (when comparing Seaman Taper's sentence to administrative punishment of a co-actor the court found that there was "no sentence to compare").

[15] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.