# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM 39232 (reh)

———————————

## UNITED STATES
*Appellee*

**v.**

## Zhermie R. TOLEDO
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 November 2020

———————————

*Military Judge:* Thomas J. Alford.

*Approved sentence:* Bad-conduct discharge, confinement for 1 year and 11 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 23 January 2019 by GCM convened at Minot Air Force Base, North Dakota.

*For Appellant:* Mark C. Bruegger, Esquire.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Anne M. Delmare, USAF; Mary Ellen Payne, Esquire; Alexis Dorner (civilian extern).[1]

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges.*

Senior Judge POSCH delivered the opinion of the court, in which Judge RICHARDSON and Judge CADOTTE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

[1] Ms. Dorner was at all times supervised by attorneys admitted to practice before this court.

———————————————

POSCH, Senior Judge:

Appellant's case is before this court for the second time. At Appellant's original trial in January 2017, a general court-martial composed of a military judge sitting alone convicted Appellant, contrary to his pleas, of attempted enticement of a person to engage in sexual acts with him in exchange for money, attempted receipt of child pornography, attempted production of child pornography, and procuring persons to engage in sexual acts with him in exchange for money (patronizing prostitutes) in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934.[2] The court-martial sentenced Appellant to a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Upon initial review, this court set aside the patronizing prostitutes conviction and the sentence, and affirmed the remaining findings of guilty. *United States v. Toledo*, No. ACM 39232, 2018 CCA LEXIS 497, at *2–3, 30 (A.F. Ct. Crim. App. 16 Oct. 2018) (unpub. op.). In the exercise of this court's authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), we authorized a rehearing on the sentence. *Toledo*, 2018 CCA LEXIS 497 at *30. At the rehearing held in January 2019, Appellant was sentenced by a military judge to a bad-conduct discharge, confinement for 1 year and 11 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence that was adjudged at the rehearing.

After the rehearing and in this appeal, Appellant personally identifies two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (1) whether the Government improperly informed the military judge of Appellant's original sentence, which affected the military judge's impartiality; and (2) whether Appellant's sentence is inappropriately severe. Finding no error and concluding that Appellant's sentence is not inappropriately severe, we affirm the sentence that was adjudged at the rehearing.

———————————————

[2] The first three of these offenses are specified in the *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), and the latter offense is specified in the *MCM* (2008 ed.). Unless otherwise specified, all other references in this opinion to the Uniform Code of Military Justice (UCMJ) and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

## I. BACKGROUND

Appellant answered an online advertisement for prostitution services that was posted by the Minot (North Dakota) Police Department as part of an undercover law enforcement operation. Appellant began communicating with an officer posing as a 16-year-old girl under the pseudonym "Riley." In time, Appellant asked "Riley" to send him nude pictures that showed her private areas. Appellant described sex acts he was willing to pay $250.00–$400.00 per hour for "Riley" to perform when they eventually met. He also texted that he wanted to videotape the acts. A few days after Appellant responded to the online advertisement, he made arrangements to meet "Riley" in a hotel parking lot with the intention of going to a room with her after they met. When he arrived at the parking lot, police officers arrested Appellant and seized $300.00 in cash and a video-camera from Appellant's pockets.

At the sentencing rehearing, the Government presented text messages Appellant exchanged with "Riley." In these texts, "Riley" told Appellant "that she was really 16 years old." Appellant expressed that he wished she was younger, and that he preferred children as young as eight years old. The Government also presented evidence that Appellant offered to pay "Riley" to do "multiple pops" of "bareback sex, anal sex, and oral sex" with him. The evidence made clear that "multiple pops" means to "[e]jaculate several times" and "bareback" means "[n]o condom." Additionally, the Government showed at the rehearing that Appellant tried to receive child pornography, and attempted to participate in the making of child pornography by meeting "Riley" in a hotel parking lot, with a video-camera in hand to record his sexual encounter with her in a hotel room.

### A. Military Judge's Knowledge of Appellant's Original Sentence

#### 1. Additional Background

At the beginning of the rehearing, the Government presented to the military judge a copy of this court's unpublished opinion that authorized the convening authority to order a rehearing on the sentence. The military judge accepted the opinion as an appellate exhibit, and it was included in the record of trial.[3] Our opinion was also a matter of public record, and included this court's determination that a rehearing of the set-aside findings was not appropriate,[4]

---

[3] The trial counsel also marked as appellate exhibits, and the military judge accepted, a copy of the charge sheet and the promulgating order that was issued after the conclusion of Appellant's original court-martial.

[4] This court ordered, "Charge II and its Specification are dismissed with prejudice." *United States v. Toledo*, No. ACM 39232, 2018 CCA LEXIS 497, at *28 (A.F. Ct. Crim.

but a rehearing was authorized to determine an appropriate sentence. *See Toledo*, unpub. op. at \*28–30.

Soon after marking the opinion and other appellate exhibits, the military judge announced his qualification and acknowledged he was not "aware of any matter that might be grounds for challenge" against him, noting that he "was not the trial judge for any prior proceedings in this case, whether pretrial, trial, or post-trial." The military judge asked counsel for both parties if "either side desire[d] to question or to challenge [him]?" and both counsel replied, "No, Your Honor."

After informing Appellant of his forum rights, the military judge discussed with counsel for both parties the credit Appellant was due for pretrial and post-trial confinement. At the end of the rehearing, and after listening to the sentencing arguments by counsel, the military judge announced a sentence that included one month less confinement than was adjudged when Appellant's court-martial concluded in January 2017. The other elements of Appellant's sentence were the same as initially adjudged after Appellant's trial.

**2. Law**

"An accused has a constitutional right to an impartial judge." *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (quoting *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999)). Rule for Courts-Martial (R.C.M.) 902 outlines the circumstances when a military judge shall disqualify himself or herself in any proceeding. One distinct ground includes when the "military judge's impartiality might reasonably be questioned." R.C.M. 902(a). A "'[p]roceeding' includes pretrial, trial, post-trial, appellate review, or other stages of litigation." R.C.M. 902(c)(1).

When an appellant challenges a military judge's impartiality for the first time after trial, "'the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt' by the military judge's actions." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)). The appearance of impartiality is reviewed on appeal objectively and the military judge's conduct is tested to determine if it "would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned." *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982) (quoting E. Thode, *Reporter's Notes to Code of Judicial*

---

App. 16 Oct. 2018) (unpub. op.). This court's opinion also stated that "[t]he military judge sentenced Appellant to a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged." *Id.* at \*1–2.

*Conduct* 60 (1973)) (internal quotation marks omitted); *see also United States v. McIlwain*, 66 M.J. 312, 314 (C.A.A.F. 2008) ("Whether the military judge should disqualify herself is viewed objectively, and is 'assessed not in the mind of the military judge [her]self, but rather in the mind of a reasonable man . . . who has knowledge of all the facts.'" (alteration and omission in original) (quoting *United States v. Wright*, 52 M.J. 136, 141 (C.A.A.F. 1999))).

When the issue of disqualification is raised for the first time on appeal, we apply the plain error standard of review. *Martinez*, 70 M.J. at 157 (citing *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001)). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)).

### 3. Analysis

"The military judge at a rehearing may be the same military judge who presided over a previous trial of the same case," even when an accused requests trial by military judge alone at the rehearing. R.C.M. 810(b)(2) and (3). The rule countenances a military judge having knowledge of events that occurred at a previous hearing, not the least of which is the sentence that was announced and possibly one that the military judge herself adjudged in the same or a related case. Accordingly, we are dubious that a "military judge's impartiality might reasonably be questioned" under R.C.M. 902(a), at the same time that R.C.M. 810 allows a military judge with personal knowledge of an earlier proceeding to then preside at a rehearing in the same case.

Appellant offers a reason for receiving only one month less confinement at the rehearing compared to the sentence that was adjudged at his court-martial. He contends that

> [t]he reason for this is clear: the military judge was inappropriately notified of [Appellant]'s initial sentence when the government introduced this Court's decision (which discussed the first adjudged sentence) as an appellate exhibit. The military judge then formulated the new sentence to align with the previous one, shaving a month's confinement to reflect the dismissed charge. This situation not only calls into question the fairness of [Appellant]'s rehearing, it challenges the perception of fairness in the military justice system.

We disagree with Appellant's contention and decline to accept the assumption on which it is based. Whether this court's opinion was introduced and marked as an appellate exhibit, or was simply a matter of record, a military judge has a responsibility to carefully review the law of the case as revealed in appellate decisions and follow the instructions that accompany the return of a

case to the convening authority for further action consistent with those decisions. Thus, we would expect a military judge to examine an appellate decision in a case before presiding at a rehearing conducted in accordance with R.C.M. 810.

In carrying out that review, a military judge cannot help but learn the sentence that was set aside. And, in many cases, as happened here, colloquy with counsel is necessary to ensure an appellant receives credit for any confinement that was served.[5] A military judge is not inevitably disqualified by knowledge of the prior sentence just as review of the sentence limitations in a pretrial agreement before making a sentencing determination does not reasonably raise questions about a military judge's independence and impartiality. *See United States v. Villa*, 42 C.M.R. 166, 169 (C.M.A. 1970) (concluding "there is no reasonable risk that knowledge of the sentence provision of a pretrial agreement would incline the military judge to abstain from adjudging a less severe sentence than he would otherwise have imposed"); *see also United States v. Green*, 1 M.J. 453, 455 (C.M.A. 1976) (finding "there is no evidence indicating a failure to adjudge a fair, impartial, and appropriate sentence" where the military judge examined the quantum portion of a pretrial agreement during an inquiry into the providence of a plea).

We follow the reasoning of our superior court in *Villa* and find that the military judge who presided at Appellant's rehearing was not improperly informed of Appellant's original sentence. Nothing in the record reveals that the military judge had either predetermined the sentence he would adjudge or that he formulated a new sentence to align with the previous one. We decline to speculate that foreknowledge of the sentence that was adjudged at the conclusion of Appellant's trial somehow prejudiced Appellant, or that outside observers would "harbor doubts as to the fairness of the proceedings" as Appellant contends that they would. We conclude that Appellant fails to establish that the military judge's impartiality reasonably could be questioned or that the military judge improperly considered matters in determining an appropriate sentence. Thus, we find no error, plain or otherwise.

**B. Sentence Severity**

Appellant also claims his sentence that included a bad-conduct discharge and confinement for 1 year and 11 months is inappropriately severe. Appellant argues that "[c]ontrary to the majority of other Airmen court-martialed for similar offenses, [Appellant] was retirement eligible and forfeited hundreds of

---

[5] "An appropriate sentence on a retried or reheard offense should be adjudged without regard to any credit to which the accused may be entitled." R.C.M. 810(d)(1), *Discussion*.

thousands of dollars in retirement benefits as a result of his punitive discharge." We disagree that Appellant's sentence is inappropriately severe.

### 1. Additional Background

The personal data sheet admitted into evidence at the rehearing shows Appellant had 22 years and 10 months of service creditable toward retirement. Because Appellant had served more than 20 years on active duty, trial defense counsel introduced a chart that showed the value of retired pay Appellant would be ineligible to receive if his sentence included a punitive discharge.[6]

The Government argued for the same sentence that was adjudged at Appellant's original court-martial, and that had been approved by the convening authority at action. Appellant's trial defense counsel argued for Appellant to be sentenced to 686 days of confinement for time served, a figure that counsel for both parties agreed was correct on the record.[7] Appellant's counsel also argued for the military judge to sentence Appellant to a bad-conduct discharge, informing the military judge that Appellant "is willing to forfeit his military retirement by accepting a Bad Conduct Discharge." To illustrate the significance to Appellant of a punitive discharge, Appellant's counsel advocated, "Your Honor, after 20 years we're talking about half a million dollars."

Before trial defense counsel's argument, the military judge asked Appellant if he understood "that a bad conduct discharge terminates [Appellant's] military status and will deprive [Appellant] of any retirement benefits to include retirement pay?" Appellant relied, "Yes, Your Honor." Appellant also affirmed that he consented to his counsel stating in argument that Appellant "desired to be discharged with a bad conduct discharge."[8]

---

[6] The chart displayed the value of retired pay at ages 47 to 72, in 5-year increments, at pay grades E-1 and E-6, and assumed future rates of pay based on "2019 Pay Rates."

[7] The parties agreed Appellant was to be credited with 61 days for the time he spent in pretrial confinement and 625 days for the time he spent in post-trial confinement.

[8] Appellant also acknowledged that a bad-conduct discharge "will forever adversely stigmatize the character of [his] military service and it will limit [his] future employment and schooling opportunities," that it "may adversely affect [his] future with regard to legal rights, economic opportunities, and social acceptability," and that Appellant "would lose substantially all benefits from the Department of Veterans Affairs and the Air Force establishment, as well as any other benefits normally given by other governmental agencies." Appellant acknowledged, too, that he had discussed the matter with trial defense counsel and that he "fully underst[oo]d the ramifications of a bad conduct discharge."

**2. Law**

We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

A Court of Criminal Appeals is "required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)).[9] When arguing sentence disparity and asking this court to compare his sentence with the sentences of others, an appellant bears the burden of demonstrating those other cases are "closely related" to his, and if so, that the sentences are "highly disparate." *See United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). In *Lacy*, our superior court observed,

> Under Article 66(c), Congress has furthered the goal of uniformity in sentencing in a system that values individualized punishment by relying on the judges of the Courts of Criminal Appeals to "utilize the experience distilled from years of practice in military law to determine whether, in light of the facts surrounding [the] accused's delict, his sentence was appropriate. In short, it was hoped to attain *relative* uniformity rather than an arithmetically averaged sentence."

*Id.* (alteration in original) (quoting *United States v. Olinger*, 12 M.J. 458, 461 (CMA 1982)). This court's "power to review a case for sentence appropriateness,

---

[9] In *United States v. Ballard*, our superior court indicated that "some of [its] cases have tended to suggest that a [lower] court's reference to the sentences in other cases is flatly improper." 20 M.J. 282, 286 (C.M.A. 1985) (citations omitted). Nonetheless, *Ballard* looked favorably upon "the experienced and professional military lawyers who find themselves appointed as trial judges and judges on the courts of military review" and who develop a "solid feel for the range of punishments typically meted out in courts-martial." *Id. Ballard* expressed "confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case" in which Courts of Military Appeal "assesses for sentence appropriateness." *Id.*

including relative uniformity," then, turns on whether an appellant has demonstrated a case that is "closely related" to his own. *See id.* Cases are closely related when, for example, they include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared . . . ." *Id.* If an appellant carries that burden, then the Government must show a rational basis for the sentence differences. *Id.*

**3. Analysis**

Appellant argues that we exercise our authority to review whether his sentence is appropriate under Article 66(c), UCMJ, and reduce Appellant's adjudged confinement because, unlike most other Airmen, the loss of retired pay after 20 years of service "is sufficient punishment on its own."

As a threshold matter, we examine Appellant's factual assertion in his appeal that "the majority of other Airmen court-martialed for similar offenses," unlike Appellant, are not "retirement eligible," and thus do not lose their eligibility to receive retired pay that is a result of a punitive discharge. To the extent that Appellant contends that we should consider both the sentences and retirement eligibility of Airmen convicted of similar offenses, we find that Appellant does not identify a case that is closely related to his own that would then require the Government to show a rational basis for any sentence differences. *See Lacy*, 50 M.J. at 288.

Even though Appellant has not met his burden to demonstrate a case that is closely related to his own for comparison, we nonetheless "utilize the experience distilled from years of practice in military law" as our superior court clearly allows. *Lacy*, 50 M.J. at 288; *see also Ballard*, 20 M.J. at 286. To be sure, Appellant's record demonstrates he excelled as an Airman, consistently earning positive reviews and accolades from supervisors and leaders, culminating in "firewall five" performance reports. He deployed five times, including a combat deployment where he observed an unexploded ordnance after a rocket attack. Appellant's convictions spanned just a few days and, yet, his conduct reflected serious violations of the law that cannot be accurately characterized as a one-time lapse of judgment, indiscretion, or aberration. Appellant's sentence to confinement for 1 year and 11 months fell far short of the maximum imposable confinement of over 30 years,[10] although a ceiling on discretion is

---

[10] On appeal, the Government maintains the maximum punishment included confinement for 41 years as found by the military judge and agreed to by counsel for both parties at the rehearing. After trial, the staff judge advocate's recommendation informed the convening authority that 31 years was correct, which Appellant contends

just one measure of the severity of misconduct. We also consider that trial defense counsel argued for Appellant to be confined for 686 days—less than one month difference from the confinement that was adjudged. Appellant's statement on the record that he "desired to be discharged with a bad conduct discharge," and his acknowledgement that it would deprive him of retirement benefits to include retirement pay, is another consideration.

We disagree with Appellant's contention that "[t]he adjudged confinement was thus both unnecessary and overly harsh." We have given individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial. Following this court's Article 66(c), UCMJ, mandate to approve only so much of a sentence that, "on the basis of the entire record, should be approved," we conclude that the approved sentence is not inappropriately severe.

## II. CONCLUSION

After setting aside the patronizing prostitutes conviction, this court previously affirmed the remaining findings of guilty. The sentence adjudged at the rehearing is correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the sentence is **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

for the first time on appeal is accurate because the maximum term for attempted production of child pornography is 20 years and not 30. Appellant cites the 2012 *MCM*, pt. IV, ¶ 4.e (providing that an attempted offense "shall be subject to the same maximum punishment authorized for the commission of the offense attempted, except that *. . . in no case, other than attempted murder, shall confinement exceeding 20 years be adjudged*." (Emphasis added)). The Government contends that the maximum punishment authorized for the commission of the offense attempted, *id.*, production of child pornography, includes confinement for 30 years. 2012 *MCM*, pt. IV, ¶ 68b.e.(4). We decline to decide this matter because the ten-year difference in the maximum punishment, even if error, did not prejudice a substantial right of Appellant.