# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 39989

————————————

### UNITED STATES
*Appellee*

**v.**

### Eferm F. BAINES, Jr.
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 March 2022

————————————

*Military Judge:* Matthew N. McCall.

*Sentence:* Sentence adjudged 11 September 2020 by GCM convened at Joint Base Langley-Eustis, Virginia. Sentence entered by military judge on 22 October 2020: Dishonorable discharge, confinement for 3 years, and reduction to E-1.

*For Appellant:* Major Jenna M. Arroyo, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Morgan R. Christie, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and MEGINLEY, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge KEY and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a plea agreement, of one specification of assault consummated by a battery and one specification of aggravated assault in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928. The military judge sentenced Appellant to a dishonorable discharge, confinement for three years, and reduction to the grade of E-1. The convening authority signed a Decision on Action memorandum in which he deferred the adjudged confinement until Appellant's release from civilian confinement imposed as a result of Appellant's conviction in Virginia circuit court for related offenses. The military judge signed an entry of judgment reflecting the adjudged findings and sentence, including the deferment of confinement.

Appellant raises a single issue on appeal: whether his sentence is inappropriately severe. We find no relief is warranted, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant met NB, an active duty Air Force member, when they were both deployed to Africa in 2016. They married in August 2017. In January 2019, Appellant and NB were stationed at Joint Base Langley-Eustis, Virginia, and lived together in an off-base apartment in Hampton, Virginia.

On 14 January 2019, Appellant got into an argument with NB, who was approximately eight weeks pregnant at the time, in a bedroom in their apartment. Appellant had come to suspect that he might not be the father of the child; his suspicions were significantly fueled by a prior experience with a different woman in which he had been falsely led to believe he was the father of a child. During the argument, Appellant grabbed NB by the neck, and they fell onto a bed. Appellant then squeezed NB's neck with his hands; NB subsequently told police that she lost consciousness twice while Appellant was strangling her. Eventually, Appellant let go and allowed NB to get up, whereupon she leaned against a dresser and gasped for air.

Appellant then grabbed NB's cell phone and iPad, took them into the living room, and struck them against the floor, damaging them. NB grabbed her keys and went into the living room, where the argument continued. NB threw her keys at Appellant, hitting him in the face, and then temporarily left the apartment. When NB returned, she went into the bedroom where Appellant was and

the argument resumed. NB threw a bottle of cologne at Appellant, who then stood up and struck NB in the face with his closed fist.[1]

NB then left the bedroom and returned with her 9mm handgun. She pointed the handgun toward Appellant and fired a shot between his legs. Appellant fell to the floor when he heard the shot, looked up at NB, and saw the weapon had jammed. NB threw the handgun to the floor and ran out of the apartment. In the parking lot of the apartment complex she found a tow truck being driven by JJ. NB told JJ her husband was trying to shoot her. JJ allowed NB into the cab of his truck and began to drive out of the parking lot. In the meantime, Appellant had retrieved his own 9mm handgun, exited the apartment, and went into the parking lot where he had seen NB enter JJ's truck. As JJ reached the parking lot exit, Appellant fired six shots at the truck. One bullet hit the truck's passenger side rear-view mirror; another bullet traveled across the street, went through a window, and lodged in the wall of a resident's room in a senior living center. However, none of the bullets struck any person.

JJ drove to a local restaurant where he called the police, who arrived shortly thereafter. NB was taken to a hospital where she was treated for a scratch, a contusion, swelling, and other injuries to her head and neck. Sometime later that night, Appellant began exchanging phone messages with NB and informed her that at various points he was being pursued by police. NB repeatedly urged Appellant to turn himself in, but Appellant refused. Eventually Appellant crashed the vehicle he was driving and then shot himself in the neck; as a result, he suffered some permanent nerve damage and hearing loss in one ear. After Appellant shot himself he was apprehended by police on 15 January 2019.

The Commonwealth of Virginia prosecuted Appellant in civilian criminal court in Hampton, Virginia, resulting in his conviction on 11 July 2019 for the following offenses: maliciously shooting at an occupied vehicle, VA CODE ANN. § 18.2-154; attempted malicious wounding (of JJ), VA CODE ANN. § 18.2-51; shooting a firearm in public, VA CODE ANN. § 18.2-280; recklessly handling a firearm, VA CODE ANN. § 18.2-56.1; and destruction of property with value or damage less than $1,000.00, VA CODE ANN. § 18.2-137.[2] NB declined to participate in Appellant's civilian trial, and when called as a witness she invoked her

---

[1] Appellant entered into a stipulation of fact with the Government which states that Appellant struck NB once with his fist, but also states NB later told police Appellant struck her with his fist an estimated five or six times.

[2] Appellant was separately prosecuted and convicted in Newport News, Virginia, on 19 August 2019 for felony eluding law enforcement, VA CODE ANN. § 46.2-817(B).

Fifth Amendment[3] privilege against self-incrimination. As a result, the Commonwealth of Virginia dismissed three charges against Appellant in which NB was a named victim, including: assault and battery of a family or household member, VA CODE ANN. § 18.2-57.2; strangling NB resulting in bodily injury, VA CODE ANN. § 18.2-51.6; and attempting to shoot NB with the intent to maim, disfigure, disable, or kill, VA CODE ANN. § 18.2-26/18.2-51.

On 2 October 2019, for his civilian convictions in Hampton, Virginia, Appellant was sentenced to 23 years of confinement, with 20 years suspended, and to 20 years of supervised probation.[4]

The convening authority referred four specifications against Appellant for trial by a general court-martial: attempted murder of NB by shooting at her with a firearm on or about 14 January 2019, in violation of Article 80, UCMJ, 10 U.S.C. § 880; assault consummated by a battery by striking NB in the face and squeezing her neck on or about 14 January 2019, in violation of Article 128, UCMJ; assault with intent to inflict bodily harm on NB by shooting at her with a loaded firearm on or about 14 January 2019, in violation of Article 128, UCMJ; and, related to a separate prior incident in Texas, squeezing NB's neck with his hands between on or about 1 November 2018 and on or about 2 December 2018, in violation of Article 128, UCMJ. Appellant and the convening authority entered a plea agreement whereby the convening authority agreed, *inter alia*, to withdraw and dismiss the attempted murder specification and the 2018 assault specification from Texas.[5] In addition, Appellant agreed that the military judge must sentence him to confinement for a minimum of 12 months and a maximum of two years for the remaining assault consummated by a battery specification, and for a minimum of 12 months and a maximum of seven years for the aggravated assault specification, with the adjudged terms of confinement to run concurrently.

---

[3] U.S. CONST. amend. V.

[4] Appellant received a suspended sentence of two years in confinement for his conviction in Newport News, Virginia, for eluding police.

[5] The plea agreement provided the dismissals would "ripen into prejudice . . . upon completion of appellate review which confirms [sic] the approved [sic] findings and sentence."

## II. DISCUSSION

### A. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Courts of Criminal Appeals are "not required . . . to engage in sentence comparison with specific [other] cases 'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). Cases are "closely related" when, for example, they involve "co-actors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* "[A]n appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.'" *Id.* A Court of Criminal Appeals may compare an appellant's case to other non-"closely related" cases in order to assess the propriety of the sentence, but is not required to do so. *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001). However, unless the cases are closely related, "[t]he appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. LeBlanc*, 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *Ballard*, 20 M.J. at 283).

### B. Analysis

Appellant emphasizes several points in extenuation and mitigation in support of his argument that his sentence is inappropriately severe and this court should reduce his term of confinement. He contends his text messages with NB in the hours after his offenses on 14 January 2019 demonstrate he already felt great remorse for his actions, so much so that he attempted to kill himself. Appellant cites his strong performance reports, several character statements,

and witness testimony admitted during sentencing proceedings as indicative of his excellent rehabilitative potential. As extenuation, he asserts his prior experience with being misled regarding the paternity of another child exacerbated his emotional reaction to his suspicions that he was not the father of NB's child. Although he does not challenge the legitimacy of his convictions, Appellant contends the Commonwealth of Virginia has already prosecuted and punished him for much of his conduct on 14 January 2019, including the act of shooting at JJ's tow truck, albeit without NB as a named victim, and that his sentence to 20 years of supervised probation served as a powerful incentive for his future good behavior. Furthermore, Appellant asserts that the time he had spent in civilian confinement prior to his court-martial allowed him to reflect on his offenses and their impact on the lives of others.

However, we are not persuaded Appellant's sentence is inappropriately severe as a matter of law. Appellant's points, although relevant, largely reiterate the arguments the Defense made during the court-martial and matters that were before the military judge when he decided the sentence. We are confident the military judge afforded these points—as well as the other matters presented—appropriate weight during his deliberations. In accordance with the plea agreement, the military judge could have sentenced Appellant to as much as seven years in confinement in addition to the dishonorable discharge and other punishments. Appellant fails to specifically explain why three years in confinement is an inappropriately severe punishment for strangling his pregnant wife, striking her in the face with his fist, and then shooting at her multiple times with his handgun after pursuing her into their apartment complex parking lot.

Appellant additionally contends NB's case is "closely related" to his, and that therefore we are required to compare her case to his—specifically the fact that NB was not prosecuted and received no sentence—in assessing the appropriateness of his sentence. However, we find Appellant's invocation of sentence comparison inapt. We are required to compare sentences only in those "rare circumstances" when the fairness of a sentence can be determined only by considering "*disparate sentences adjudged* in closely related cases." *Lacy*, 50 M.J. at 288 (emphasis added) (citation omitted). Even if we assume *arguendo* that any misconduct on NB's part on 14 January 2019 would be closely related to Appellant's case, NB was not convicted and therefore she has no sentence to compare. Indeed, we do not even know what, if anything, she might have been convicted of had she been prosecuted, because the matter was never adjudicated. Of course, this is not to say NB's behavior—whether aggravating, extenuating, or mitigating—was not relevant to determining Appellant's sentence. It certainly provides a significant part of the context for Appellant's offenses.

However, relevant actions by NB were included in the stipulation of fact admitted at the court-martial, and we are confident the military judge gave them appropriate consideration.

Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude Appellant's sentence is not inappropriately severe.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court