# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM 40327

———————————

## UNITED STATES
*Appellee*

**v.**

## Chase J. STANFORD
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 February 2024

———————————

*Military Judge*: James R. Dorman (motions); Matthew P. Stoffel.

*Sentence*: Sentence adjudged 25 March 2022 by GCM convened at Joint Base Pearl Harbor-Hickam, Hawaii. Sentence entered by military judge on 12 May 2022: Bad-conduct discharge, confinement for 3 months, reduction to E-1, and a reprimand.

*For Appellant*: Major Samantha P. Golseth, USAF.

*For Appellee*: Lieutenant Colonel J. Peter Ferrell, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, GRUEN, and KEARLEY, *Appellate Military Judges*.

Judge GRUEN delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge KEARLEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

GRUEN, Judge:

Contrary to his pleas, a general court-martial composed of a military judge sitting alone convicted Appellant of six specifications of negligent dereliction of duty for failing to register weapons, in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892; and one specification of wrongful use of anabolic steroids on divers occasions, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[1] Consistent with Appellant's pleas, the military judge found Appellant not guilty of five other specifications.[2] Appellant was sentenced to a bad-conduct discharge, confinement for three months, reduction to the grade of E-1, and a reprimand. The convening authority took no action on findings and approved the sentence in its entirety.

Appellant raises three assignments of error on appeal which we reordered: (1) whether the evidence is factually sufficient to support the portion of Charge II and its specification, alleging wrongful divers use of anabolic steroids, which extends beyond 31 May 2018; (2) whether his sentence was inappropriately severe; and (3) whether the entry of judgment (EoJ) should be corrected. We find merit in the third assignment of error, order correction of the EoJ in our decretal paragraph, and affirm the findings and sentence.

## I. BACKGROUND

Appellant entered active duty in September 2012. Appellant deployed to Afghanistan in April 2016 and returned to Joint Base San Antonio-Lackland, Texas, in October 2016. He left Joint Base San Antonio for a permanent change of station to Joint Base Pearl Harbor-Hickam, Hawaii, in May 2018. At the time of his move, Appellant was married to AS.[3] They divorced in August 2019 after approximately one and a half years of marriage.

In September 2020, AS was contacted by agents from the Air Force Office of Special Investigations and was asked about Appellant's steroid use. She

---

[1] Appellant's convicted offenses spanned from May 2018 to May 2020. Because the versions of Articles 92 and 112a, UCMJ, in the *Manual for Courts-Martial, United States* (2016 ed.) and the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*) are substantively the same, all references to the UCMJ in this opinion are to the 2019 *MCM*.

[2] Appellant was acquitted of one specification of rape in violation of Article 120, UCMJ, 10 U.S.C. § 920; one specification of assault in violation of Article 128, UCMJ, 10 U.S.C. § 928; and three specifications of domestic violence in violation of Article 128b, UCMJ, 10 U.S.C. § 928b.

[3] AS was an active Air Force servicemember during this time frame.

stated she was aware of his use and that she had administered steroid injections to him prior to his move to Hawaii.[4]

During Appellant's trial, AS testified that it was after Appellant returned from his deployment that he began using anabolic steroids. To her knowledge, Appellant continued to use steroids until he left Texas in May 2018. When asked if she knew whether Appellant continued to use anabolic steroids in Hawaii, AS replied that while she could not say for certain, they did have conversations about body building competitions and "cruising," which she explained as "not coming off of testosterone and going on a low level to ensure that if your testosterone shuts down, you still have some."

MH, a civilian, moved to Hawaii in August 2018 to attend school. She met Appellant on a popular dating application and their relationship progressed to living together. They first dated around February 2020 and then moved in with each other approximately one month later. Their relationship ended in August 2020. MH testified that the topic of anabolic steroids came up early in their relationship. She stated that she is an athlete and she and Appellant would often talk about athletic performance and working out. Appellant asked her opinion on anabolic steroids and during one of their conversations Appellant stated, "[W]ell, I do them."

After Appellant first discussed steroid use with MH, she observed him using steroids on multiple occasions. MH testified that "[t]here was [sic] a few times, like after showers at night, he would pull out this box from underneath the sink in the bathroom and it would have syringes and vials in it with liquids in it. He would create a dose and inject it into his upper buttocks." MH further testified that on a couple occasions she assisted him in injecting steroids into his buttocks. MH recalled Appellant used steroids in the beginning and middle of their relationship, but by July and August 2020, she did not recall seeing him use them.

## II. DISCUSSION

### A. Factual Sufficiency

Appellant argues that his conviction for Charge II and its specification—wrongful use of anabolic steroids on divers occasions between on or about 1 October 2016 and on or about 31 May 2020—is factually insufficient in that "the evidence in the record does not support the portion of this specification which extends beyond 31 May 2018."

---

[4] AS had admitted her own wrongful use of steroids and testified at Appellant's trial pursuant to a grant of testimonial immunity.

**1. Law**

We review issues of factual sufficiency de novo. Article 66(d), UCMJ, 10 U.S.C. § 866(d); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399).

The elements which the Government must prove beyond a reasonable doubt for wrongful use of anabolic steroids in violation of Article 112a, UCMJ, are: (1) that Appellant used a controlled substance and (2) that it was wrongful. *See Manual for Courts-Martial, United States* (2019 ed.), pt. IV, ¶ 50.b.(2).

**2. Analysis**

Appellant was convicted of wrongful use of anabolic steroids on divers occasions between on or about 1 October 2016 and on or about 31 May 2020.[5] Appellant contends the evidence is factually insufficient to support a conviction for using steroids past on or about 31 May 2018 and requests this court narrow the conviction time frame to reflect an end use date of 31 May 2018. We decline to do so as the facts elicited at trial support the time frame in the adjudged conviction.

Appellant does not contest the factual sufficiency of the entirety of his conviction and has not contested SSgt AS's testimony about his use of steroids from October 2016 until the time he moved to Hawaii in May 2018. He instead takes issue with MH's testimony alleging her testimony at trial was not credible, and thus the military judge could not use her testimony to find him guilty

---

[5] Appellant was originally charged with divers wrongful use of anabolic steroids between on or about 1 October 2016 and on or about 23 August 2020. After hearing the testimony, the military judge excepted the words and figures "23 August 2020," and substituted the words and figures "31 May 2020." The military judge found Appellant not guilty of the excepted words and figures and guilty of the substituted words and figures.

of any uses after 31 May 2018. Appellant contends the only testimony supporting his use after he arrived in Hawaii came from MH—since the military judge found him not guilty of the other charges and specifications to which MH testified, the military judge must have found MH not credible and so her testimony regarding Appellant's steroid use must be disregarded as not credible. We do not concur with Appellant's assertion.

The military judge, as the factfinder in this case, assessed the entirety of the testimony and evidence admitted at trial and determined whether there was evidence on each specification to find Appellant guilty beyond a reasonable doubt. The fact that the military judge determined some specifications did not meet this standard, yet the evidence provided regarding the anabolic steroid use supported a finding of guilty beyond a reasonable doubt, is not an anomaly. The military judge had authority as factfinder to accept some of MH's testimony as entirely credible and discount other portions of her testimony. "Court members may believe one portion of a witness's testimony but disbelieve others." *United States v. Bare*, 63 M.J. 707, 713 (A.F. Ct. Crim. App. 2006) (citing *United States v. Harris*, 8 M.J. 52, 59 (C.M.A. 1979) ("However, the factfinders may believe one part of a witness' testimony and disbelieves another."))."

We have taken a fresh, impartial look at the evidence in the record and have applied neither a presumption of innocence nor a presumption of guilt to make our own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt—to include the adjudged time frame for the wrongful divers use of anabolic steroids. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt for the specification to Charge II as adjudged.

## B. Sentence Severity

Appellant argues the sentence to a bad-conduct discharge imposed by the military judge was inappropriately severe in comparison to other cases, specifically *United States v. Kerr*, No. 202200140, 2023 CCA LEXIS 434 (N.M. Ct. Crim. App. 17 Oct. 2023) (unpub. op.), which found a bad-conduct discharge inappropriate.[6] Additionally, he argues his service history "provides ample justification to determine a bad-conduct discharge is an inappropriately severe

---

[6] In *Kerr*, the appellant pleaded guilty to stealing military property and a Lexus sedan belonging to another Marine. The fellow Marine was responsible for repaying the Government for the lost property and suffered from loss of use of his personal vehicle. The

sentence" in this case. Appellant further argues that "anabolic steroid use is extremely common in weight trainers in the United States" and that "there was no evidence that this use was blatantly reckless." On the issue of his convictions for failing to register six firearms, Appellant argues there was "no evidence [ ] presented that [Appellant's] failure to register was knowing or deliberate." He further argues that there was a delay in charging and punishment after the military discovered Appellant's failure to timely register his weapons suggesting even the Air Force did not perceive the alleged violations as severe.

Appellant contends his "sentence to three months' confinement appropriately addressed the seriousness of the offenses he was convicted of, ensured his rehabilitation, and provided for specific deterrence, general deterrence, and social retribution." Additionally, he cites his more than nine years of service, which includes combat service, as a basis to find the adjudged bad-conduct discharge inappropriate. While these points are matters for consideration, we do not agree that Appellant's sentence was inappropriately severe.

### 1. Law

We review issues of sentence appropriateness de novo. *See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). Our authority to review a case for sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to, considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk,* 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). Although we have discretion to determine whether a sentence is appropriate,

United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) found that despite the seriousness of the offenses, the appellant's sentence to eight months' confinement alone reflected "the seriousness of the offenses committed, promote[d] respect for the law, provide[d] just punishment for the offenses, promote[d] adequate deterrence of misconduct, protect[ed] others from future crimes by Appellant, and serve[d] to rehabilitate Appellant." The NMCCA further considered the appellant's exemplary service and mental health history and ultimately found a bad-conduct discharge inappropriate, setting aside that portion of the appellant's sentence.

we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

The predecessor of the United States Court of Appeals for the Armed Forces explained why sentence comparison is a challenge, stating, "From the mere face of court-martial promulgating orders or similar documents, it is simply not possible to assess the multitude of aggravating and mitigating sentencing factors considered in the cases they represent." *United States v. Ballard*, 20 M.J. 282, 285 (C.M.A. 1985). Courts of Criminal Appeals are "not required . . . to engage in sentence comparison with specific [other] cases 'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283). Cases are "closely related" when, for example, they involve "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id*. "[A]n appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.'" *Id*. A Court of Criminal Appeals may compare an appellant's case to other non-"closely related" cases in order to assess the propriety of the sentence, but is not required to do so. *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001). However, unless the cases are closely related, "[t]he appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. LeBlanc*, 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *Ballard*, 20 M.J. at 283).

**2. Analysis**

The maximum sentence Appellant faced for his convictions included a dishonorable discharge, more than five years' confinement, reduction to the lowest pay grade, total forfeitures of pay and allowances, reprimand, and a fine. Trial counsel recommended a bad-conduct discharge, 12 months' confinement, total forfeitures, and reduction to the grade of E-1. The military judge sentenced Appellant to a bad-conduct discharge, three months' confinement, reduction to E-1, and a reprimand.

Appellant contends this court should compare his case to *Kerr* and set aside his bad-conduct discharge. Appellant has failed to meet his burden of demonstrating that the facts in *Kerr* are closely related to his case and that the sentences are highly disparate. Appellant and Kerr were not co-actors involved in a common crime, nor were they servicemembers involved in a common or parallel scheme. Furthermore, there is no direct nexus between the servicemembers whose sentences are sought to be compared. While this court may compare

Appellant's case to other non-closely related cases in order to assess the propriety of the sentence, we are not required to do so and decline to do so in this case.

Appellant wrongfully used steroids for almost four years. He involved both his wife and MH, a civilian, in his use by having them assist in injecting him with the drugs. He believed he could use without being caught because in his mind, the Air Force would not test him due to testing being expensive and generally only accomplished upon command direction. His argument to this court that "anabolic steroid use is extremely common in weight trainers in the United States" and that "there was no evidence that this use was blatantly reckless" demonstrates a lack of appreciation for the illegality of his conduct.

Furthermore, Appellant disregarded the importance of firearm registration even given his status as a military member with more than nine years of service, to include combat service. While we recognize Appellant received military recognition, awards, and performance reports that noted he regularly exceeded expectations, we also note that he was administratively demoted for firing his weapon in the backyard of his on-base home and he received nonjudicial punishment for failing to obey a lawful order before his trial on the issues at bar.

We have conducted a thorough review of Appellant's court-martial record. We conclude that the nature and seriousness of the offenses support the sentence as entered. We find that Appellant's points on appeal largely reiterate matters that were before the military judge when he decided the sentence, and we are confident the military judge afforded these points appropriate weight during his deliberations. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(d), UCMJ, we conclude that the sentence is not inappropriately severe and we affirm the sentence as entered.

## C. Entry of Judgment

Appellant argues that the EoJ is incorrect for two reasons. First, the findings for Specification 3 of Charge I in the EoJ reads as follows: "G, except the figures: 'AK-74' and 'RO.' Of the excepted figures: NG." We note the military judge, when reading his findings at trial, correctly referred to the excepted figures as "AK-47." Second, the findings for the Specification of Charge II in the EoJ reads as follows: "G, except the words and figures: '24 August 2020,' substituting therefore [sic] the words and figures '31 May 2020.' Of the excepted words and figures: NG; of the substituted words and figures: G." We note the military judge, when reading his findings at trial, correctly referred to the excepted figures as "23 August 2020." While the court considers these entries scriveners' errors and agree the EoJ requires correction as it fails to properly reflect the military judge's findings at Appellant's court-martial, we find no

material prejudice to Appellant's substantial rights. We modify the EoJ in our decretal paragraph below.

### III. CONCLUSION

The entry of judgment is modified as follows: for Specification 3 of Charge I, the findings language "AK-74" is modified by excepting "74" and substituting "47." The entry of judgment is further modified as follows: for the Specification of Charge II, the findings language "24" is modified by excepting "24" and substituting "23." The findings and sentence as modified are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings, as modified, and the sentence are **AFFIRMED**.



FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court