# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32778**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Christian M. BLAIR**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 July 2025

————————————

*Military Judge*: Jeremy L. Mooney.

*Sentence*: Sentence adjudged 30 October 2023 by SpCM convened at Ramstein Air Base, Germany. Sentence entered by military judge on 21 December 2023: Bad-conduct discharge, confinement for 90 days, reduction to E-1, and a reprimand.

*For Appellant*: Major Matthew L. Blyth, USAF; Major Samantha P. Golseth, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, GRUEN, and BREEN, *Appellate Military Judges*.

Judge BREEN delivered the opinion of the court, in which Chief Judge JOHNSON and Judge GRUEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

BREEN, Judge:

A special court-martial composed of a military judge convicted Appellant, consistent with his pleas and pursuant to a plea agreement, of one specification of physical control of a vehicle while drunk causing injury in violation of Article 113, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 913.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 90 days, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence and provided the language for the reprimand.

Appellant raises four issues on appeal, which we reworded: (1) whether trial counsel committed prosecutorial misconduct in his sentencing argument; (2) whether Appellant's sentence is inappropriately severe;[2] (3) whether the record of trial is substantially incomplete; and (4) whether Appellant is entitled to relief because of a 175-day delay between announcement of the sentence and docketing with this court.

In his reply brief, Appellant conceded issue (3) is moot. Accordingly, we do not address it further. As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

On 22 October 2022, Appellant attended a friend's birthday party at a house near Ramstein Air Base, Germany. At the party, he participated in a drinking game, consuming multiple cups of alcohol. After the game ended, he casually drank an additional alcoholic beverage. In the early morning hours of 23 October 2022, despite drinking several alcoholic drinks, Appellant decided that he was going to drive home.

At approximately 0300 hours, Appellant set his cruise control at 130 kilometers per hour[3] on his Ford Focus (Ford) and drove home in dark and foggy conditions. On the drive, Appellant saw what he described as a white light before hitting the rear end of another vehicle, a Toyota Auris (Toyota), occupied by two German nationals. The impact of the collision caused the Toyota to strike the right guardrail. Appellant's Ford spun clockwise and then

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant personally raises issue (2) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] This speed equates to approximately 81 miles per hour.

collided with the Toyota a second time, projecting both vehicles into the opposite guardrail. Then, a third vehicle struck a piece of debris from the original accident and then hit the Toyota before also colliding into the guardrail.

A short time later, local law enforcement arrived at the accident scene. At the scene, a responding officer gave Appellant a preliminary breathalyzer test, which showed the presence of alcohol. A subsequent blood test revealed a blood alcohol content (BAC) of 0.120 grams of alcohol per 100 milliliters of blood. Appellant also failed a series of Standardized Field Sobriety Tests.

The passenger in the Toyota, SG, was transported to a local hospital, where she received emergency surgery for life-threatening injuries. SG endured several bone fractures to her nasal bones, left rib, sacrum, and cervical spine. In addition to the fractures, SG sustained bruising to her liver, kidneys and lungs, and suffered a hemorrhage on her frontal lobe. Doctors placed SG into a coma for several days, and she remained in neurosurgical intensive care for a total of 13 days.

The driver of the Toyota, AG, sustained multiple bruises to her ribs, whiplash, a concussion, and a bruised lung. She was hospitalized for three days. The driver of the third vehicle did not suffer any significant injuries from the accident.

## II. DISCUSSION

### A. Trial Counsel's Sentencing Argument

Appellant argues that trial counsel committed prosecutorial misconduct by making improper arguments in support of her sentencing recommendation: first, that trial counsel created an impermissible mathematical relationship between the time SG spent in therapy and the time Appellant should be placed into confinement; and later, that trial counsel used another mathematical relationship to essentially argue that Appellant deserved the "lifetime stigma" of a bad-conduct discharge based on her speculation that SG may suffer from the lifetime effects from her injuries. We disagree with Appellant's claims.

#### 1. Additional Background

As part of the Government's case, assistant trial counsel presented a stipulation of expected testimony from SG's primary care physician. The expected testimony detailed SG's recovery from the accident, including several months of physical therapy. In the five months of treatment after the accident, SG continued to suffer from impaired motor skills in her right hand as well as

issues with her throat and vocal cords. However, her issues with walking and grip strength had improved.

After the Government rested their sentencing case, trial counsel indicated AG and SG wished to provide victim impact statements through a translator. Prior to the victims providing their unsworn statements, the military judge received assurance from trial counsel that the statements were not part of the Government's case. During their unsworn statements, the victims informed the trial court about the financial, social, psychological, and medical impact they felt directly resulted from Appellant's physical control of a vehicle while drunk. This included statements from SG that "this accident will always be a psychological burden for me," and "[m]y physical and psychological complaints will stay with me for the rest of my life."

During sentencing arguments, trial counsel argued that an appropriate sentence should include the maximum amount of confinement permitted under the plea agreement: 180 days, and a bad-conduct discharge. Trial counsel anchored this sentence recommendation to the victim impact directly resulting from Appellant's crime.

> TC: Through the plea deal, the cap is [six] months, and the [G]overnment is asking for the [six]-month cap. A sentence of [six]6 months is not even half the time that [SG] is in need of therapy for the injuries she may suffer for the rest of her life.
>
> For [Appellant] to serve anything less than [six] months of confinement, when [SG] has been in need of therapy for over a year is an insult to the injuries, trauma, anxiety, inconvenience, and so much more that he has caused her.
>
> Your Honor, [six] months pales in comparison to the therapy she has endured and may endure for the rest of her life. As far as a bad conduct discharge, we all know that a bad conduct discharge is punitive, and the effect of this discharge characterization will remain with [Appellant] for the rest of his life. And that is the intention of the request, Your Honor. The damages he's caused will likely remain with her.
>
> She told the court today that her reintegration into the professional world is not yet foreseeable.
>
> MJ: All right, Trial Counsel, did the [G]overnment present any evidence under [Rule for Courts-Martial] R.C.M. 1001(b)(4), matters in aggravation for this court to consider?
>
> TC: No, Your Honor.

> MJ: So you've referred repeatedly to what was stated in the victim unsworn statements as justification for the punishment that the court is being asked to administer in this case. I will remind trial counsel that unsworn statements are not evidence admitted under R.C.M. 1001(b)(4) as matters in aggravation.

Appellant did not object at any point during this portion of trial counsel's sentencing argument. Additionally, the military judge did not make any references to trial counsel's argument when he sentenced Appellant.

### 2. Law

In general, we review allegations of improper argument and prosecutorial misconduct de novo. *United States v. Voorhees,* 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted).

"Congress has granted the victim of an offense under the UCMJ the right to be 'reasonably heard' during any sentencing hearing related to that offense." *United States v. Edwards*, 82 M.J. 239, 245 (C.A.A.F. 2022) (citing Article 6b(a)(4)(B), UCMJ, 10 U.S.C. § 806b(a)(4)(B)). "After presentation by trial counsel, a crime victim of an offense of which the accused has been found guilty has the right to be reasonably heard at the presentencing proceeding relating to that offense." R.C.M. 1001(c)(1). In exercising this right, the victim is permitted to provide an unsworn statement and the statement "may only include victim impact and matters in mitigation." R.C.M. 1001(c)(3). "Victim impact" involves "any financial, social, psychological, and medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B). When no objection is made at trial, we review for plain error. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citations omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id.* at 401 (quoting *United States v. Fletcher*, 62 M.J. 175, 179 (2005)). When trial counsel makes an improper sentencing argument, the question is "whether or not we can be 'confident that [the appellant] was sentenced on the basis of the evidence alone." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (alterations in original) (quoting *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013)).

In arguing the merits of a specific sentence, "[t]rial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Frey*, 73 M.J. at 248 (citation omitted); *see also* R.C.M. 1001(g). Furthermore, in sentencing argument, "[t]rial counsel may . . . refer to the sentencing considerations set forth in R.C.M. 1002(f)." R.C.M. 1001(h). Proper sentencing considerations include "the need for the sentence to reflect

the seriousness of offense," "provide just punishment for the offense," as well as victim impact. R.C.M. 1002(f). Additionally, an unsworn statement containing victim impact, "although not evidence, can nevertheless be commented on by counsel in presentencing argument." *United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021) (citation omitted).

"Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 235 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997) (per curiam)). "As part of the presumption we further presume that the military judge is able to distinguish between proper and improper sentencing arguments." *Id*. The failure of the military judge to note improper argument on the record does not rebut the presumption that the military judge distinguished between proper and improper argument; an appellant must provide evidence to rebut the presumption. *Id*.

### 3. Analysis

We find no error with respect to trial counsel's argument. The victims provided victim impact through unsworn statements that were properly made pursuant to R.C.M. 1001(c)(3). Trial counsel's arguments were based on the medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty as permitted by R.C.M. 1001(c)(2)(B). The basis for these arguments came from SG's unsworn statement and the evidence provided by the stipulation of expected testimony. Thereafter, trial counsel attempted to quantify this harm by drawing some mathematical equivalent between the harm Appellant caused to SG and the punishment he should receive.

Appellant cites no precedent, and we find none, in which this court or our superior court determined that mathematical analogies between victim impact and a sentencing recommendation would represent improper argument. Under R.C.M. 1001(f), when imposing a just sentence, consideration should be made of the need for the sentence to "reflect the seriousness of offense" and "provide just punishment for the offense," among other considerations. In this regard, arguments quantifying "victim impact" will at the very least provide some additional context for the sentencing authority to consider when determining an appropriate sentence for a particular accused based on all of the criteria detailed in R.C.M. 1001(f). Therefore, we do not believe there was error, let alone plain error.

Even if we were to find trial counsel's argument was improper, we would conclude Appellant suffered no prejudice because he was sentenced by a military judge sitting alone, and we presume military judges know and follow

the law. *Erickson*, 65 M.J. at 235. During trial counsel's argument, the military judge interrupted trial counsel, and ensured trial counsel understood he would not consider certain information from the victims' statements as matters in aggravation. This provided a strong indication that the military judge found the predicate for trial counsel's argument to be unpersuasive. Additionally, it appears the military judge rejected trial counsel's equivalency argument for confinement when he sentenced Appellant to the lowest amount of confinement permissible under the plea agreement. Therefore, we do not believe the military judge was so swayed by trial counsel's equivalency analogy that he sentenced Appellant on anything other than the conduct described by the evidence in this case.

We conclude that Appellant has failed to establish plain error and therefore is not entitled to relief.

## B. Sentence Severity

Appellant contends that his sentence is inappropriately severe because a bad-conduct discharge will "follow [him] for life," despite his presentation of a "potent sentencing case." As additional support, Appellant offers sentences imposed in three other military cases involving arguably similar conduct for comparison. However, we are not persuaded Appellant's sentence, which included a bad-conduct discharge, is inappropriately severe.

### 1. Additional Background

On 7 June 2023, after receiving advice from competent counsel, Appellant and the special court-martial convening authority (SpCMCA) entered into a plea agreement whereby Appellant agreed to plead guilty before a military judge alone in exchange for the SpCMCA agreeing to refer the charge and specification to a special court-martial. The plea agreement also contained a limitation on confinement for a maximum period of 180 days and a minimum period of 90 days. There were no other limitations on available punishments, so the military judge retained the ability to adjudge a bad-conduct discharge.

In accordance with the plea agreement, the military judge sentenced Appellant to the minimum imposable sentence to confinement, 90 days. Additionally, the military judge sentenced Appellant to a bad-conduct discharge, reduction to the grade of E-1, and a reprimand.

Contemporaneous to the submission of Appellant's case to this court for review, Appellant moved to attach the entries of judgment for three cases. We granted the motion over the Government's opposition, deferring decision on whether we are authorized to consider the sentences in these other cases in consideration of the applicability of *United States v. Jessie*, 79 M.J. 437

(C.A.A.F. 2020), until we performed our Article 66, UCMJ, 10 U.S.C. § 866, review of Appellant's case. All the cases involved guilty pleas at a special court-martial, involving at least one specification of physically controlling a vehicle while drunk, but only one of those cases involved injury. None of the cases resulted in a punishment that included a bad-conduct discharge.

### 2. Law

#### a. Sentence Appropriateness Generally

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although Courts of Criminal Appeals are empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

#### b. Sentence Comparison

Courts of Criminal Appeals (CCAs) are "not required . . . to engage in sentence comparison with specific [other] cases 'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 288 (C.M.A. 1985)) (additional citation omitted). Cases are "closely related" when, for example, they involve "co[-]actors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id*. "[A]n appellant bears the burden of demonstrating that any cited cases are 'closely related' . . . ." *Id*.

A CCA is not required to compare an appellant's case to non-closely related cases. *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001) (citations omitted). "The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. LeBlanc*, 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *Ballard*, 20 M.J. at 283).

### 3. Analysis

As noted above, we deferred answering the question as to whether we could consider the entries of judgment for three other cases until our Article 66,

UCMJ, review.[4] We do not agree that the other cases Appellant provided are "closely related." These other cases do not involve individuals who were co-actors with Appellant in this case, and there is no "direct nexus" between Appellant's crime and theirs. *See Lacy*, 50 M.J. at 288. Additionally, only one of these three cases included "injury" as an element of a charged specification, and the entry of judgment for that case provided no additional information about the number of victims, the nature of the offense, the degree of injury caused to the "injured" victim, or any other individualized evidence in mitigation or aggravation that is comparable to Appellant's case. Therefore, we do not believe the lack of an adjudged bad-conduct discharge in those cases as a matter of comparison is relevant or persuasive for this case.

Similarly, we are not persuaded that Appellant's sentence, including a bad-conduct discharge, is inappropriately severe. As detailed in Appellant's guilty plea and the evidence admitted at trial, Appellant made the conscious decision to consume alcohol and then drive his vehicle at 130 kilometers per hour in dark and foggy conditions. Unfortunately, the consequences for Appellant's actions fell upon two innocent German nationals who were hospitalized for serious injuries and who will continue to live with the physical and emotional complications of those injuries moving forward.

The evidence in mitigation showed that Appellant tried to assist at least one victim after the accident, and his guilty plea revealed that he felt remorse for his actions. This willingness to take responsibility, along with his positive military service after the incident, provided sufficient evidence in mitigation to warrant a sentence of confinement at the bottom of the range permitted by the plea agreement. However, this mitigation is not so significant that it rendered Appellant's bad-conduct discharge inappropriately severe punishment.

Having considered the nature and seriousness of Appellant's misconduct and matters contained in the entire court-martial record, including his record of service, all matters submitted in mitigation, and his written and oral unsworn statements, we conclude the entire adjudged sentence, to include the adjudged bad-conduct discharge, appropriately punished Appellant for his misconduct. Therefore, the adjudged and entered sentence is not inappropriately severe.

---

[4] There is a preliminary question as to whether we can consider these matters from outside of the "entire record." *See United States v. Jessie*, 79 M.J. 437, 440–44 (C.A.A.F. 2020). We assume, without deciding, for the purpose of this analysis that we can consider the entries of judgment.

### C. Post-Trial Delay: From Sentencing to Docketing

#### 1. Additional Background

The military judge sentenced Appellant on 30 October 2023. After sentencing, the court reporter took approximately 89 days to complete and certify the transcript, including its initial preparation and review by the parties. Thereafter, the legal office took an additional 13 days (102 days total) to complete the record of trial (ROT), and they shipped the ROT to the Air Force Appellate Records Branch (JAJM) on 8 February 2024. However, the ROT was not officially docketed with the court until 22 April 2024, contributing to another 74 days delay. Since docketing with the court, Appellant requested six enlargements of time[5] and filed his brief on 23 December 2024 (245 days after docketing).

#### 2. Law

"Due process entitles convicted service members to a timely review and appeal of court-martial convictions." *United States v. Moreno*, 63 M.J. 129, 132 (C.A.A.F. 2006) (citation omitted). Whether an appellant has been deprived of his due process right to speedy post-trial and appellate review, and whether constitutional error is harmless beyond a reasonable doubt, are questions of law we review de novo. *United States v. Prasad*, 80 M.J. 23, 29 (C.A.A.F. 2020) (citation omitted); *United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011) (citing *Moreno*, 63 M.J. at 135).

A presumption of unreasonable delay arises when the case is docketed more than 150 days from an appellant being sentenced. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citation omitted). A presumptively unreasonable delay triggers an analysis of the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (additional citations omitted).

"We analyze each factor and make a determination as to whether that factor favors the Government or the appellant." *Id*. at 136 (citation omitted). Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id*. (citing *Barker*, 407 U.S. at 533 ("Courts must still engage in a difficult and sensitive balancing process.")). "No single factor is required for finding a due process violation and the absence of a given factor

---

[5] Of note, on 9 August 2024, Appellant asserted his right to a timely appeal in his second motion for enlargement of time, but he also agreed with the enlargement request.

will not prevent such a finding." *Id.* (citation omitted). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

A CCA may provide appropriate relief for excessive post-trial delay. Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2). Appropriate relief is not synonymous with meaningful relief. *United States v. Valentin-Andino*, 85 M.J. 361, 366 (C.A.A.F. 2025).

Additionally, "although it is within a [CCA's] discretion to place its reasoning about Article 66(d)(2)[, UCMJ,] relief on the record, it is not required to do so." *Id.* at 367 (citing *United States v. Winckelmann*, 73 M.J. 11, 16 (C.A.A.F. 2013)).

**3. Analysis**

Here, the case was not docketed with this court within 150 days from sentencing, creating a presumption of unreasonable delay. Therefore, we conduct an analysis of the four *Barker* factors to determine if Appellant is entitled to relief.

The delay exceeded the 150-day standard by 25 days, and mainly resulted from the 73 days it took for the ROT to complete the "shipping" process. The Government provided no explanation as to why the ROT, which was completed on day 102, took an additional 73 days to reach JAJM. Based upon the presumption of unreasonable delay and the lack of an explanation for the delay, the first two factors weigh in favor of Appellant. Conversely, the third and fourth *Barker* factors weigh in favor of the Government because Appellant did not assert his speedy post-trial processing rights during the period of delay and he did not identify any prejudice that he suffered from the delay.

Because we find no particularized prejudice, and the delay is not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system, we likewise find no due process violation. *See Toohey*, 63 M.J. at 362.

We also conclude there is no basis for relief under Article 66(d)(2), UCMJ, in the absence of a due process violation. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(d), UCMJ, 10 U.S.C. § 866(d), authority to grant relief.

### III. CONCLUSION

As entered, the findings are correct in law. Article 66(d), UCMJ, 10 U.S.C. § 866(d), *Manual for Courts-Martial, United States* (2024 ed.). In addition, the sentence is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Article 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court